## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAVE LONG BEACH ISLAND, INC., *et al.,* ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | Case No. 1:25-cv-02214-CJN |
| v. ) | |
| ) | Judge Carl J. Nichols |
| UNITED STATES DEPARTMENT OF ) | |
| COMMERCE, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |

## <u>FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AN ADMINISTRATIVE STAY OR PRELIMINARY INJUNCTION</u>

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

I. Introduction ....................................................................................................1

II. Statutory Background: The Marine Mammal Protection Act (MMPA)....................................2

III. Factual Background...............................................................................................4

    A. The Empire Wind Project .................................................................................4

    B. NMFS' Letter of Authorization (LOA) ...............................................................5

    C. Plaintiffs' First Lawsuit (*Save LBI I*)...................................................................8

    D. BOEM's Stop Work Order and Subsequent Amendment .........................................8

    E. Summary Judgment Ruling Rejecting Plaintiffs' MMPA Claim in *Save LBI I*....................9

    F. Plaintiffs' Second Lawsuit (*Save LBI II*)...............................................................10

    G. Plaintiffs' Nearly Identical MMPA Claim in the Instant Lawsuit .....................................10

IV. Standard of Review...............................................................................................10

V. Argument ..........................................................................................................12

    A. Plaintiffs are not entitled to relief under APA Section 10(d)........................................12

    B. Plaintiffs fail to establish irreparable harm. ..........................................................12

        1. Plaintiffs' failure to seek injunctive relief until well over a year after construction
           begin, despite two previous lawsuits, belies their claim of irreparable harm. ................13

        2. Plaintiffs fail to show that they will suffer any imminent harm, let alone
           irreparable harm. ..................................................................................15

    C. Plaintiffs have failed to establish a likelihood of success on the merits of their
        MMPA claim........................................................................................17

        1. Plaintiffs' MMPA claim is barred by the doctrine of *res judicata*...................................17

        2. Plaintiffs' MMPA claim has no merit. ...............................................................21

        3. Plaintiffs' MMPA claim challenges a superseded LOA................................................22

        4. Plaintiffs waived their right to challenge the LOA because they did not submit
           public comments....................................................................................23

i

D. The balance of the equities and the public interest weigh against an injunction. ................25

VI. Conclusion .................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Case**                                                                                     **Page(s)**

*Adams v. U.S. EPA,*
   38 F.3d 43 (1st Cir. 1994) ....................................................................................24

*Alaska Forest Ass'n v. Vilsack,*
   883 F. Supp. 2d 136 (D.D.C. 2012) ......................................................................18

*Alaska Wildlife All. v. U.S. Fish & Wildlife Serv.,*
   No. 3:21-cv-00209-SLG-KFR, 2023 U.S. Dist. LEXIS 55848 (D. Alaska Feb. 6, 2023) ........18

*B&D Land & Livestock Co. v. Connor,*
   534 F. Supp. 2d 891 (N.D. Iowa 2008) ................................................................12

*Benisek v. Lamone,*
   585 U.S. 155 (2018) ............................................................................................13

*Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC,*
   569 F.3d 485 (D.C. Cir. 2009) ............................................................................17

*Chaplaincy of Full Gospel Churches v. England,*
   454 F.3d 290 (D.C. Cir. 2006) ............................................................................16

*Clevinger v. Advoc. Holdings, Inc.,*
   No. 23-1159 (JMC), 2023 U.S. Dist. LEXIS 121860 (D.D.C. July 15, 2023) ........................11

*Cook Inletkeeper v. Raimondo,*
   533 F. Supp. 3d 739 (D. Alaska 2021) ................................................................24

*Ctr. for Biological Diversity v. Regan,*
   No. CV 21-119 (RDM), 2023 WL 5437496 (D.D.C. Aug. 23, 2023) ....................................12

*Comm. for a Constructive Tomorrow v. U.S. Dep't of theInterior,*
   No. CV 24-774, 2024 WL 2699895 (D.D.C. May 24, 2024 ...................................... 14, 15, 22

*Dall. Safari Club v. Bernhardt,*
   453 F. Supp. 3d 391 (D.D.C. 2020) ................................................................13, 14

*Dep't of Transp. v. Pub. Citizen,*
   541 U.S. 752 (2004) ............................................................................................24

*Mexichem Specialty Resins, Inc. v. EPA,*
   787 F.3d 544 (D.C. Cir. 2015) ............................................................................16

*Native Village of Chickaloon v. NMFS,*
   947 F. Supp. 2d 1031 (D. Alaska 2013) ..............................................................18

*Nat'l Wildlife Fed'n v. EPA*,
    286 F.3d 554 (D.C. Cir. 2002) ................................................................................ 24

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................................. 10, 11, 25

*NRDC v. Evans*,
    232 F. Supp. 2d 1003 (N.D. Cal. 2002) ................................................................ 18

*NRDC v. Evans*,
    279 F. Supp. 2d 1129 (N.D. Cal. 2003) ................................................................ 20

*Padgett v. Surface Transp. Bd.*,
    804 F.3d 103 (1st Cir. 2015) ................................................................................ 24

*Save LBI I*,
    721 F. Supp. 3d 317 (D.N.J. 2024) ......................................................................... 8

*Save Long Beach Island v. U.S. Dep't of Com.*,
    3:23-cv-01886-RK-JBD, 2025 WL 1829543 (D.N.J. July 2, 2025) ................. passim

*Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*,
    123 F.4th 1 (1st Cir. 2024) ................................................................................... 23

*Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*,
    No. 1:22-cv-11091-IT, 2023 WL 3660689 (D. Mass. May 25, 2023) .................... 14

*Sierra Club v. U.S. Army Corps of Eng'rs*,
    990 F. Supp. 2d 9 (D.D.C. 2013) ......................................................................... 12

*Sims v. Apfel*,
    530 U.S. 103 (2000) ............................................................................................. 24

*Singh v. Carter*,
    185 F. Supp. 3d 11 (D.D.C. 2016) ....................................................................... 11

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ............................................................................................. 19

*United States v. L.A. Tucker Truck Lines, Inc.*,
    344 U.S. 33 (1952) ............................................................................................... 24

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ............................................................................................. 25

*Winter v. Nat. Res. Def. Council,*
  555 U.S. 7 (2008) ...................................................................................................... 11, 16

*Workman v. Bissessar,*
  275 F. Supp. 3d 263 (D.D.C. 2017) ............................................................................. 11

**Statutes**

5 U.S.C. § 705 .................................................................................................... 1, 10, 12

16 U.S.C. § 1362 (13) ............................................................................................... 2

16 U.S.C. § 1362 (18)(A) .......................................................................................... 2

16 U.S.C. § 1362 (18)(A)(i) ...................................................................................... 3

16 U.S.C. § 1362 (18)(A)(ii) ..................................................................................... 2

16 U.S.C. § 1371(a)(5)(A)(i) .................................................................................. 3, 4

16 U.S.C. § 1371(a)(5)(A)(i)(II) ............................................................................... 4

16 U.S.C. § 1371(a)(5)(D)(i) ..................................................................................... 3

16 U.S.C. § 1371(a) .................................................................................................. 2

16 U.S.C. § 1372 (2)(a) ............................................................................................ 2

42 U.S.C. § 4370m-6(b) ........................................................................................... 11

**Regulations**

50 C.F.R. § 216.104 ............................................................................................... 3, 4

50 C.F.R. § 216.104(a) ............................................................................................. 4

50 C.F.R. § 216.104(b) ............................................................................................. 4

50 C.F.R. § 216.105 ............................................................................................... 3, 4

50 C.F.R. § 216.105(b) ............................................................................................. 4

50 C.F.R. § 216.106(a) ............................................................................................. 3

50 C.F.R. § 216.106(b) ............................................................................................. 3

50 C.F.R. § 216.3 ..................................................................................................... 2

**Federal Register**

87 Fed. Reg. 55409 (Sept. 9, 2022). ......................................................................... 6

88 Fed. Reg. 22696 (Apr. 13, 2023) ......................................................................... 6

89 Fed. Reg. 11342 (Feb. 14, 2024) .......................................................................... 6

89 Fed. Reg. 14442 (Feb. 27, 2024)...................................................................6, 7, 22

90 Fed. Reg. 7662 (Jan. 22, 2025) ..............................................................7, 8, 22, 23

90 Fed. Reg. 8363 (Jan. 29, 2025) ...............................................................................9

**Other Authorities**

11A Wright & Miller's Federal Practice & Procedure § 2948.1 (3d ed. 2023) ...................13, 16

18 Wright & Miller's Federal Practice & Procedure § 4406 (2d ed. 2002)................................18

**Public Documents**

Joint Record of Decision for Empire Wind Project,
https://www.boem.gov/sites/default/files/documents/renewable-energy/state-
activities/Empire%20Wind%20OCA-A%200512%20ROD%20signed.pdf.
........................................................................................................................5

BOEM's February 21, 2024 Conditions of the Construction and Operations Plan Approval,
https://www.boem.gov/sites/default/files/documents/renewable-energy/state-
activities/Empire%20Wind%20OCA-A%200512%20ROD%20signed.pdf.
........................................................................................................................5

BOEM's Conditions of the Construction and Operations Plan Approval for Empire Wind 1,
https://www.boem.gov/sites/default/files/documents/renewable-energy/state-
activities/Empire%20Wind%20OCA-A%200512%20ROD%20signed.pdf.
........................................................................................................................5

Public Comments on NMFS's Notice of Receipt of Application for Regulations and Letter of
Authorization
https://media.fisheries.noaa.gov/2022-11/Empirewind_2024LOA_NOR_PubComm_OPR1.pdf
........................................................................................................................6

Public Comments on NMFS's Proposed Incidental Take Regulation
https://www.regulations.gov/docket/NOAA-NMFS-2023-0053
........................................................................................................................6

NMFS's February 2024 Letter of Authorization Issued to Empire Wind
https://www.fisheries.noaa.gov/s3/2024-02/EmpireWind-2024LOA-OPR1.pdf
........................................................................................................................6

NMFS's January 2025 Modified Letter of Authorization Issued to Empire Wind
https://www.fisheries.noaa.gov/s3/2025-01/EmpireWind-2025ModLOA-LOA-OPR1.pdf
........................................................................................................................7

## I.    Introduction

The Court should deny Plaintiffs' request for injunctive relief, first and foremost, because their significant delay in making the request disproves any allegation of an "emergency" and is fatal to any claim of irreparable harm. In their August 2025 motion, ECF No. 17—which Plaintiffs base solely on their claim under the Marine Mammal Protection Act ("MMPA")— Plaintiffs seek to enjoin construction of the Empire Wind 1 project and stay the effective dates of the project's Record of Decision and the National Marine Fisheries Service's ("NMFS") Letter of Authorization ("LOA"). But Plaintiffs make this request *nearly two years* after Federal Defendants issued the Record of Decision, and *well over a year* after Empire Wind began offshore construction in April 2024. Plaintiffs' considerable delay is even more egregious in light of the fact that, over the last year and a half, Plaintiffs brought two almost identical MMPA claims against Federal Defendants in the District of New Jersey; Plaintiffs easily could have sought the same injunctive relief they seek now in those previous lawsuits, but they did not. Moreover, Plaintiffs' irreparable harm arguments are based entirely on basic standing allegations, which fail to meet the high standard for demonstrating that Plaintiffs will be harmed irreparably absent injunctive relief while the parties are afforded an opportunity to fully brief this matter on the merits. Thus, Plaintiffs are not entitled to a preliminary injunction because they cannot establish irreparable harm. Nor can they obtain relief under Section 10(d) of the Administrative Procedure Act ("APA"), which is intended to "preserve" the status quo, not halt construction that has been underway for over a year. 5 U.S.C. § 705.

The Court should also deny Plaintiffs' request because they are unlikely to succeed on the merits of their MMPA claim. Indeed, in one of Plaintiffs' previous actions asserting the same MMPA arguments they assert here, the court expressly rejected each of Plaintiffs' MMPA

arguments on the merits. *See Save Long Beach Island v. U.S. Dep't of Com.* (*Save LBI I*), No. No. 3:23-cv-01886-RK-JBD, 2025 WL 1829543 (D.N.J. July 2, 2025). Under the doctrine of *res judicat*a, the court's final judgment in *Save LBI I* bars Plaintiffs from relitigating those same issues here. Further, Plaintiffs' MMPA claim is not justiciable because it is based on an improper challenge to a superseded LOA, and because Plaintiffs waived the right to bring a claim in federal court asserting issues that they failed to raise during NMFS's public comment periods.

Further, the balance of the equities weighs against granting injunctive relief, as the public interest would be harmed by Plaintiffs' unwarranted disruption of government-issued permits and approvals on issues that have already been litigated and on which Plaintiffs have lost.

For these reasons, as further demonstrated below, the Court should deny Plaintiffs' request for injunctive relief.

## II.    Statutory Background: The Marine Mammal Protection Act (MMPA)

Subject to certain exceptions, the MMPA prohibits the "taking . . . of marine mammals." 16 U.S.C. §§ 1371(a), 1372(2)(a). The term "take" means "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." *Id.* § 1362(13); 50 C.F.R. § 216.3. The MMPA identifies two types of "harassment" (*i.e.*, "take") of marine mammals: "Level A" and "Level B" harassment. 16 U.S.C. § 1362(18)(A); 50 C.F.R. § 216.3. Level B harassment— the type at issue here—is less severe and is defined as "any act of pursuit, torment, or annoyance" which has the "**potential to disturb** a marine mammal or marine mammal stock in the wild by causing disruption of behavioral patterns, including, but not limited to, migration, breathing, nursing, breeding, feeding, or sheltering." 16 U.S.C. § 1362(18)(A)(ii) (emphasis

added).[1]

The MMPA contains certain exceptions to the prohibition on taking marine mammals, including an exception under which NMFS must authorize the "incidental" taking of marine mammals, upon request, when certain conditions have been met. *Id.* § 1371(a)(5)(A)(i).[2] A party seeking to obtain authorization for incidental take must receive an Incidental Take Authorization from NMFS, of which there are two types: Incidental Take Regulations, which, together with a LOA—the type at issue here—may cover a period of up to five years, *id.* § 1371(a)(5)(A)(i), 50 C.F.R. § 216.106(a);[3] and an Incidental Harassment Authorization, which may cover a period of up to one year, 16 U.S.C. § 1371(a)(5)(D)(i).

The MMPA provision addressing Incidental Take Regulations/LOAs provides, in relevant part:

> [U]pon request . . . by citizens . . . who engage in a specified activity . . . within a specified geographical region, [NMFS] shall allow, during periods of not more than five consecutive years each, **the incidental, but not intentional, taking . . . . of small numbers of marine mammals of a species or population stock** if [NMFS] . . . finds that the total of such taking during each five-year (or less) period concerned will have a negligible impact on such species or stock[.]

---

[1] By contrast, Level A harassment—which is not at issue here—is defined as having the "**potential to injure** a marine mammal or marine mammal stock in the wild[.]" *Id.* § 1362 (18)(A)(i) (emphasis added).

[2] The Secretary of Commerce has delegated authority to NMFS's Office of Protected Resources to implement the MMPA. *See* Department of Commerce Organizational Orders (DOO) 25-5 § 6.04 (May 4, 2015).

[3] To obtain an LOA, an applicant—like Empire Wind here—must apply for one pursuant to an Incidental Take Regulation issued by NMFS. 50 C.F.R. § 216.106(a). The Incidental Take Regulation, by itself, does not authorize take. To issue an LOA authorizing incidental take, NMFS must determine that the level of taking expected from the activities identified in the LOA application will be consistent with the findings made for the total taking allowable under the Incidental Take Regulation. *Id.* § 216.106(b). Because the LOA is the final authorizing document issued to the applicant, we refer to this type of authorization as an LOA throughout this brief.

3

*Id.* § 1371(a)(5)(A)(i) (emphasis added); *see also* 50 C.F.R. §§ 216.104, 216.105.

Issuing an LOA involves a comprehensive rulemaking process with multiple periods of public review and comment. When seeking an LOA, an applicant must submit a written request to NMFS containing detailed information about their specified activity and the proposed taking. *See* 50 C.F.R. § 216.104(a). Once NMFS determines that a request is adequate and complete, the agency begins its public review process. As part of the process, NMFS publishes in the Federal Register a "notice of receipt" of a request for an Incidental Take Regulation to govern the issuance of an LOA and provides a thirty-day public comment period. *Id.* § 216.104(b). After considering all comments received on the notice of receipt, NMFS then provides another opportunity for public comment on the proposed Incidental Take Regulation governing issuance of the LOA. 16 U.S.C. § 1371(a)(5)(A)(i).

When a request is approved, the Incidental Take Regulation governing issuance of the LOA must prescribe: (1) the "permissible methods of taking" pursuant to the applicant's specified activity; (2) "other means of effecting the least practicable adverse impact" on the affected species and its habitat; and (3) "requirements pertaining to the monitoring and reporting" of the authorized take. 16 U.S.C. § 1371(a)(5)(A)(i)(II); 50 C.F.R. § 216.105(b).

## III. Factual Background

### A. The Empire Wind Project

On November 21, 2023, Bureau of Ocean Energy Management ("BOEM") and NMFS issued a joint Record of Decision documenting their respective approvals relating to construction and operation of the Empire Wind project, including the development of two offshore wind

facilities, known as Empire Wind 1 and Empire Wind 2.[4] The Outer Continental Shelf lease area for the project is located about twelve nautical miles south of Long Island, New York, and about 16.9 nautical miles east of Long Branch, New Jersey. The project is expected to produce a total capacity of 2,076 megawatts of power. Plaintiffs' motion seeks to halt the ongoing construction on the Empire Wind 1 development. *See* ECF No. 17-1 at 1 ("Pls.' Br."). The construction of Empire Wind 2 is not at issue in Plaintiffs' motion, as construction has not yet begun.

On February 21, 2024, BOEM approved Empire Wind's Construction and Operations Plan, subject to its issuance of numerous mandatory terms and conditions.[5] And on December 20, 2024, BOEM reissued its Construction and Operations Plan Approval as two separate approvals, one for the Empire Wind 1 and one for Empire Wind 2.[6]

### B.     NMFS' Letter of Authorization (LOA)

In addition to BOEM's approval of its Construction and Operations Plan, Empire Wind sought and received an LOA from NMFS under the MMPA, authorizing the take of small numbers of marine mammals, by Level B harassment, incidental to its construction of the Empire Wind Project. Empire Wind did not seek authorization for mortality or serious injury of marine mammals, nor was any mortality or serious injury anticipated or authorized by NMFS.

---

[4] The Joint Record of Decision is available online at , https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/Empire%20Wind%20OCA-A%200512%20ROD%20signed.pdf.

[5] BOEM's February 21, 2024 Conditions of the Construction and Operations Plan Approval are available online at https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/MASTER%205547_App%20A_Emp%20WindTCs_SV.pdf.

[6] BOEM's Conditions of the Construction and Operations Plan Approval for Empire Wind 1 are available online at https://www.boem.gov/renewable-energy/state-activities/empire-wind-1-conditions-cop-approvalpdf.

On September 9, 2022, NMFS published a notice of receipt of an application from Empire Wind for the development and implementation of regulations governing the incidental taking of marine mammals and issuance of an LOA in the Federal Register. 87 Fed. Reg. 55409 (Sept. 9, 2022). Upon publishing the notice of receipt, NMFS provided a thirty-day public comment period, inviting the public to provide information, suggestions, and comments on Empire Wind's application and request. *Id.* Plaintiffs did not submit any public comments on the notice of receipt.[7]

After conducting a review of Empire Wind's application and the public comments on the notice of receipt, on April 13, 2023, NMFS published a proposed Incidental Take Regulation that would govern the issuance of Empire Wind's requested LOA and opened another thirty-day public comment period on the proposed rule. 88 Fed. Reg. 22696 (Apr. 13, 2023). Plaintiffs did not submit any public comments on the proposed Incidental Take Regulation.[8]

On February 14, 2024, after consideration of the public comments received on the proposed rule, NMFS issued its final Incidental Take Regulation. 89 Fed. Reg. 11342 (Feb. 14, 2024). And, on February 27, 2024, NMFS published notice of its issuance of an LOA to Empire Wind pursuant to the final rule, 89 Fed. Reg. 14442 (Feb. 27, 2024).[9] The February 2024 LOA— at issue in Plaintiffs' MMPA claim that is the sole basis for their motion for preliminary injunction—governs Empire Wind's incidental taking of marine mammals during construction of

---

[7] The public comments on NMFS's notice of receipt can be accessed online at https://media.fisheries.noaa.gov/2022-11/Empirewind_2024LOA_NOR_PubComm_OPR1.pdf.

[8] The public comments on NMFS's proposed Incidental Take Regulation can be accessed online at https://www.regulations.gov/docket/NOAA-NMFS-2023-0053.

[9] The February 2024 LOA issued to Empire Wind can be accessed online at https://www.fisheries.noaa.gov/s3/2024-02/EmpireWind-2024LOA-OPR1.pdf.

the Project for a five-year period, from February 22, 2024, to February 21, 2029. *See* 89 Fed.

Reg. at 14443. As part of its terms and conditions, the LOA provides a comprehensive suite of

mandatory mitigation and monitoring measures, including:

1. implementation of spatio-temporal seasonal/time of day work restrictions;
2. use of multiple NMFS-approved Protected Species Observers (PSOs) to visually observe for marine mammals (with any detection within specifically designated zones triggering a delay or shutdown, as applicable);
3. use of NMFS-approved passive acoustic monitoring (PAM) operators to acoustically detect marine mammals … (with any detection within designated zones triggering a delay or shutdown, as applicable);
4. implementation of clearance and shutdown zones;
5. use of soft-start prior to the start of foundation pile driving;
6. use of noise attenuation technology during foundation pile driving;
7. use of situational awareness monitoring for marine mammal presence;
8. use of sound field verification monitoring;
9. use of ramp-up acoustic sources during [High-Resolution Geophysical] surveys;
10. implementation of vessel separation zones between marine mammals and project vessels;
11. use of [Passive Acoustic Monitoring] within the vessel transit corridor for Project vessels to travel over 10 knots (11.5 miles per hour); and
12. implementation of additional Vessel Strike Avoidance measures to reduce the risk of a vessel collision with a marine mammal.

*Id.* at 14443-44.

On January 22, 2025, in response to a request for modification by Empire Wind and in

accordance with the MMPA, NMFS issued a modified LOA. *See* 90 Fed. Reg. 7662 (Jan. 22,

2025).[10] The modified LOA—which Plaintiffs do not challenge, or even reference, in their

Complaint or motion for preliminary injunction—supersedes the LOA issued in February 2024,

---

[10] The modified January 2025 LOA issued to Empire Wind can be accessed online at
https://www.fisheries.noaa.gov/s3/2025-01/EmpireWind-2025ModLOA-LOA-OPR1.pdf.

with effective dates of January 16, 2025, to February 21, 2029. The modifications made to the LOA include "the LOA Holder's name as well as mitigation and monitoring measures related to vessel strike avoidance, sound field verification reporting, and requirements for passive acoustic monitoring (PAM)." 90 Fed. Reg. at 7662. However, NMFS determined that the modifications did "not change the findings made for the [Incidental Take Regulation] and [did] not result in any change in the total estimated number of takes of marine mammals." *Id.*

### C.    Plaintiffs' First Lawsuit (*Save LBI I*)

On April 4, 2023, Plaintiffs filed a lawsuit in the District of New Jersey challenging a number of Incidental Take Authorizations issued by NMFS for multiple offshore wind projects along the East Coast. *See Save LBI I*, No. 3:23-cv-01886-RK-JBD (D.N.J.). In February 2024, the court dismissed the action without prejudice based on its finding that Plaintiffs lacked standing. *See Save LBI I*, 721 F. Supp. 3d 317 (D.N.J. 2024). On March 29, 2024, Plaintiffs amended their complaint and added an MMPA challenge to NMFS's February 2024 LOA issued to Empire Wind—the same LOA challenged in this case, which Plaintiffs seek to stay in their motion. *Save LBI I*, Dkt. 81-1 ¶ 32 & n.7. But despite ongoing activities on the Empire Wind Project in April 2024, just after Plaintiffs filed their amended complaint, Plaintiffs did not seek to enjoin the Project or stay the LOA at that point, or at any other point during the life of the case. The parties completed summary judgment briefing in *Save LBI I* on December 23, 2024.

### D.    BOEM's Stop Work Order and Subsequent Amendment

On April 16, 2025, while the parties' cross-motions for summary judgment were still pending before the *Save LBI I* court, BOEM issued a Director's Order directing Empire Wind "to halt all ongoing activities related to the Empire Wind Project on the outer continental shelf to allow time for [BOEM] to address feedback it has received . . . as an outgrowth of the review

that the Department [of the Interior] is engaged in related to offshore wind projects." *See LBI I*, Dkt. 141-2 (Attachment B) (citing the President's Memorandum of January 20, 2025, 90 Fed. Reg. 8363 (Jan. 29, 2025)).

About a month later, on May 19, 2025, BOEM issued an amendment to its April 16, 2025 Director's Order, "lift[ing] the halt on activities during the ongoing review." *See LBI I*, Dkt. 143-1 (Attachment A).

**E.    Summary Judgment Ruling Rejecting Plaintiffs' MMPA Claim in *Save LBI I***

On June 11, 2025, the *Save LBI I* court issued an Order in denying Plaintiffs' motion for summary judgment and granting summary judgment in favor of Federal Defendants on standing grounds and on the merits of all claims, including Plaintiffs' MMPA claim challenging the Empire Wind LOA. *LBI I*, Dkt. 145 at ¶¶ 4, 6.b.-c. With respect to Plaintiffs' MMPA claim, the court found that NMFS reasonably used a "proportional approach" to the MMPA's "small numbers" requirement, under which NMFS compares "the number of individual[] [marine mammals] taken to the most appropriate estimation of abundance of the relevant species to determine whether the authorized take is limited to 'small numbers' of that species." *Save LBI I*, 2025 WL 1829543, at \*25 (D.N.J. July 2, 2025). The court also found that NMFS reasonably determined that the authorized take quantities, including those in the Empire Wind LOA, "met the MMPA's 'small numbers' requirement[.]" *Id.* at \*26. And the court rejected Plaintiffs' argument that NMFS's take estimates were flawed because they underestimated noise source levels, noise transmission, and range affected by noise disturbance. *Id.* at \*28. Rather, the court deferred to NMFS's "highly technical expertise" and declined to "second-guess NMFS's reasonable determinations simply because [Plaintiffs] [took] a different view." *Id.*

9

**F.      Plaintiffs' Second Lawsuit (*Save LBI II*)**

While the parties' cross-motions for summary judgment were still pending before the *Save LBI I* court, on May 12, 2025, Plaintiffs filed another lawsuit in the District of New Jersey challenging the same Empire Wind LOA under the MMPA. *See Save Long Beach Island, et al. v. U.S. Dep't of Com., et al.* (*Save LBI II*), No. 3:25-cv-04155-RK-JBD, Dkt. 1 ¶¶ 1, 20-43 (D.N.J.). In connection with filing their complaint, Plaintiffs identified *Save LBI II* as a "related case" to *Save LBI I*, and the case was assigned to the same judge. *See Save LBI II*, Dkt. 1-1 at 1. Despite the fact that construction recommenced on the Project (after a month-long pause) just days after Plaintiffs filed *Save LBI II*, Plaintiffs, again, did not seek to enjoin the Project or stay the LOA.

On June 16, 2025—five days after the court issued its summary judgment opinion in *Save LBI I*—Plaintiffs voluntarily dismissed their *Save LBI II* lawsuit. *See Save LBI II*, Dkt. 11.

**G.      Plaintiffs' Nearly Identical MMPA Claim in the Instant Lawsuit**

A few weeks later, on July 11, 2025, Plaintiffs essentially refiled their *Save LBI II* lawsuit in this Court, asserting the same MMPA claim, challenging the same Empire Wind LOA based on the same allegations. *Compare Save LBI II*, Dkt. 5 (*Save LBI II* Am. Compl.), *with* ECF No. 1 (Compl. in this action).

**IV.      Standard of Review**

The APA permits a court reviewing agency action to "issue all necessary and appropriate process[es] to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings" if it is "necessary to prevent irreparable injury[.]" 5 U.S.C. § 705. The standard for seeking such a stay is the same as the standard for seeking a preliminary injunction. *See Nken v. Holder*, 556 U.S. 418, 433 (2009).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008) (citation omitted). Such injunctive relief "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citation omitted). A plaintiff seeking a preliminary injunction must demonstrate four elements: (1) a likelihood of irreparable harm absent injunctive relief; (2) a likelihood of success on the merits; (3) a balance of hardships that tips in their favor; and (4) that the public interest weighs in favor of granting the injunction. *Id.* at 20 (citations omitted). The third and fourth factors—balancing the equities and the public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor, which includes a "burden of producing credible evidence sufficient to demonstrate her entitlement to injunctive relief[.]" *Workman v. Bissessar*, 275 F. Supp. 3d 263, 267 (D.D.C. 2017) (citations omitted).[11]

In considering a request to stay agency action under the APA, the reviewing court should bear in mind that the public is "generally entitled to the prompt execution" of an agency action "that the legislature has made final," so a stay "is not a matter of right, even if irreparable injury might otherwise result to the [plaintiff.]" *Nken,* 556 U.S. at 427 (citation omitted).[12]

---

[11] Plaintiffs argue that it is sufficient to show "either a high probability of success and some injury, or vice versa." Pls.' Br. 4 (citation omitted). But the viability of this "sliding scale approach is highly questionable . . . in light of the Supreme Court's holding in *Winter* . . ., that a court may not issue 'a preliminary injunction based only on a possibility of irreparable harm [since] injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Singh v. Carter*, 185 F. Supp. 3d 11, 16 (D.D.C. 2016) (quoting *Winter*, 555 U.S. at 22). Indeed, following "*Winter*, the D.C. Circuit has suggested, but not decided, that the sliding scale approach does not survive *Winter*'s holding." *Clevinger v. Advoc. Holdings, Inc.*, No. 23-1159 (JMC), 2023 U.S. Dist. LEXIS 121860, at *11 n.2 (D.D.C. July 15, 2023) (citation omitted).

[12] *See also* 42 U.S.C. § 4370m-6(b) (In weighing the equities for projects covered under the FAST-41 Act, courts must also "(1) consider the potential effects on public health, safety, and

## V.    Argument

### A.    Plaintiffs are not entitled to relief under APA Section 10(d).

The Court should deny Plaintiffs' request for injunctive relief under APA Section 10(d) instead of Federal Rule of Civil Procedure 65(a). APA Section 10(d) is intended to "*postpone the effective date of an agency action*" or "*preserve* status[.]" 5 U.S.C. § 705 (emphasis added). Here, BOEM and NMFS issued a Joint Record of Decision for the Empire Wind Project on November 21, 2023, BOEM approved Empire Wind's Construction and Operations Plan on February 21, 2024, and NMFS issued its initial LOA on February 27, 2024, and its modified LOA on January 22, 2025. Indeed, offshore construction has been underway for well over a year now (since April 2024). Plaintiffs should therefore not be entitled to relief under APA Section 10(d), because they are not seeking to preserve the status quo by staying the effective date of an agency rule or action. *See, e.g., Ctr. for Biological Diversity v. Regan*, No. CV 21-119 (RDM), 2023 WL 5437496, at *5 (D.D.C. Aug. 23, 2023) (finding that the ability to "'postpone the effective date' of a rule ends when the rule takes legal effect").

If the Court nevertheless considers Plaintiffs' request for injunctive relief under the APA, Plaintiffs should not be permitted to use Section 10(d) as a shield to avoid posting a bond. *See, e.g., B&D Land & Livestock Co. v. Connor*, 534 F. Supp. 2d 891, 911-12 (N.D. Iowa 2008) (issuing injunction and a stay under Section 10(d) and imposing bond).

### B.    Plaintiffs fail to establish irreparable harm.

Plaintiffs have failed to establish irreparable harm, and the Court should deny Plaintiffs' motion on this basis alone. *Sierra Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 38

---

the environment, and the potential for significant negative effects on jobs resulting from an order or injunction; and (2) not presume that the harms described in paragraph (1) are reparable.").

(D.D.C. 2013) ("[A] court may refuse to issue an injunction without considering any other factors when irreparable harm is not demonstrated." (citation modified)).

> 1. **Plaintiffs' failure to seek injunctive relief until well over a year after construction began, despite two previous lawsuits, belies their claim of irreparable harm.**

Plaintiffs' delay in seeking injunctive relief of well over a year, despite numerous opportunities to do so, is fatal to their claim of irreparable harm. *Dall. Safari Club v. Bernhardt*, 453 F. Supp. 3d 391, 403 (D.D.C. 2020); *Benisek v. Lamone*, 585 U.S. 155, 159 (2018) (per curiam) ("[A] party requesting a preliminary injunction must generally show reasonable diligence" in seeking emergency relief.); *see also* 11A Wright & Miller's Federal Practice & Procedure § 2948.1 (3d ed. 2023) (updated May 21, 2025) ("A long delay by plaintiff after learning of the threatened harm also may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.").

Plaintiffs filed the instant motion on August 21, 2025, requesting "emergency" relief to enjoin the construction of Empire Wind 1 and stay the LOA issued to Empire Wind. But Plaintiffs' massive delay in seeking such relief belies any claim of an emergency. The timeline speaks for itself. Plaintiffs bring this motion *nearly two years* after Federal Defendants issued the Record of Decision approving the Project in November 2023, *a year and a half* after BOEM approved Empire Wind's Construction and Operations Plan and the challenged LOA became effective in February 2024, *seventeen months* after Plaintiffs filed their first lawsuit challenging the LOA in March 2024, *sixteen months* after offshore construction began in April 2024, *three months* after Plaintiffs filed their second lawsuit challenging the LOA in May 2025, and *forty-two days* since Plaintiffs filed the current lawsuit in July 2025. Thus, the Court should deny

Plaintiffs' motion, which seeks to disturb the status quo by halting offshore construction that is already well underway and which they never previously sought to stop.

Other courts have denied injunctive relief on the basis of delay that was much less egregious than Plaintiffs' delay. For instance, the Massachusetts District Court denied a motion for preliminary injunction seeking to halt construction of another offshore wind project based on the plaintiffs' delay in seeking injunctive relief until shortly after pile-driving construction began. *Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*, Case No. 1:22-cv-11091-IT, 2023 WL 3660689, at *5 (D. Mass. May 25, 2023). The court noted that the project's construction schedule had been publicly available on BOEM's website for months before they sought an injunction. *Id.* ("Plaintiffs did not file their Motion for a Stay . . . until May 10, 2023, despite knowing for months that installation of the monopiles would commence in May 2023 and that installation of cables and scour protection had already commenced." (citation omitted)). Based on this, the court concluded that "Plaintiffs' substantial delay in seeking preliminary relief is fatal to their claim of irreparable harm." *Id.* at *4. Additionally, this Court has previously denied a similar motion to enjoin construction of an offshore wind project based, in part, on its consideration that "Plaintiffs waited until the eve of in-water construction to file their motion." *Comm. for a Constructive Tomorrow v. U.S. Dep't of the Interior* (*CFACT*), No. CV 24-774 (LLA), 2024 WL 2699895, at *5 (D.D.C. May 24, 2024) (noting that, "[c]ourts in this jurisdiction have found that '[a]n unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm'" (*Dall. Safari Club*, 453 F. Supp. 3d at 403)).

Here, the Empire Wind construction schedule has been publicly available since BOEM approved Empire Wind's Construction and Operations Plan in February 2024 (*i.e.*, for over

14

eighteen months) and offshore construction has been underway since April 2024 (*i.e.*, for sixteen months). These periods of delay are far greater than those involved in the *Seafreeze* and *CFACT* cases. Thus, the lateness of Plaintiffs' request for injunctive relief clearly establishes a lack of irreparable harm and Plaintiffs' motion should be denied on this basis.

### 2. Plaintiffs fail to show that they will suffer any imminent harm, let alone irreparable harm.

Even aside from their egregious delay, Plaintiffs have not met their burden to demonstrate irreparable harm. As an initial matter, Plaintiffs appear to improperly conflate the Article III standing inquiry—which looks to whether a plaintiff has suffered an "injury in fact"—with the separate, more demanding standard for demonstrating "irreparable harm." Pls.' Br. 14-16. Indeed, Plaintiffs' irreparable harm argument is based almost entirely on standing allegations asserted by Plaintiff Captain Alan Shinn, who is the *only* Plaintiff for which Plaintiffs have proffered a standing declaration. *See* ECF No. 17; Pls.' Br. 14-16 (citing cases addressing the elements of standing and arguing that Captain Shinn is "a person for whom the aesthetic and recreational values of the area are and will be lessened due to the allowance of the Empire Wind [LOA]"). But a "prospective injury that is sufficient to establish standing . . . does not necessarily satisfy the more demanding burden of demonstrating irreparable injury." *CFACT*, 2024 WL 2699895, at *4 (citation omitted). Thus, even if one Plaintiff could establish standing to bring this lawsuit, Plaintiffs have fallen far short of demonstrating any irreparable harm capable of supporting their request for injunctive relief. [13]

---

[13] Federal Defendants reserve their right to challenge Plaintiffs' standing. Notably, in *Save LBI I*, the court found that lead Plaintiffs, Save LBI and Dr. Stern, failed to establish standing because their vague allegations of harm were insufficient to establish any imminent injury. *Save LBI I*, 2025 WL 1829543, at *18-24. Also of relevance here, given Plaintiffs' similar "zone of interests" arguments in this case, *see* Pls.' Br. 14-15, the *Save LBI I* court further found that

To constitute "irreparable harm," the injury alleged must be "both certain and great, actual and not theoretical, beyond remediation, and of such *imminence* that there is a clear and present need for equitable relief[.]" *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (citation modified). The Supreme Court has made clear that this standard is a rigorous test, and that an injunction may be granted on nothing less than a showing "that irreparable injury is *likely* in the absence of an injunction[.]" *Winter*, 555 U.S. at 22; *see also* 11A Wright & Miller's Federal Practice & Procedure § 2948.1 ("[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury."). The D.C. Circuit likewise "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

Here, Plaintiffs assert vague allegations that Plaintiff Captain Shinn will suffer economic harm if his dolphin and whale watching business declines due to Project construction. Pls.' Br. 16. However, despite detailing how many tours Captain Shinn runs a day and per week, Plaintiffs' motion and Captain Shinn's declaration are noticeably lacking any allegations that he *has* suffered a decline in business since Project construction started *over a year ago*, in April 2024. Nor do Plaintiffs even attempt to make a showing that Captain Shinn's alleged harm would be irreparable absent injunctive relief while the parties are afforded an opportunity to fully brief this matter on the merits. These allegations plainly fail to establish irreparable harm entitling Plaintiffs to emergency injunctive relief.

---

"Plaintiffs' allegation that [their] injuries fall within the zone of interest of the MMPA [] is not a substitute for proof of [] injury in fact." *Save LBI I*, 2025 WL 1829543, at *23.

**C.    Plaintiffs have failed to establish a likelihood of success on the merits of their MMPA claim.**

As discussed above, Plaintiffs' failure to establish irreparable harm is fatal to their motion. However, the Court should deny Plaintiffs' motion for the additional reason that they are unlikely to succeed on the merits of their MMPA claim—the only claim they raise in their motion—and fail to demonstrate otherwise. *See* Pls.' Br. 1 ("For the purposes of this Motion . . . Plaintiffs seek relief pursuant to the [MMPA.]"). Thus, the Court should deny Plaintiffs' motion.

**1.    Plaintiffs' MMPA claim is barred by the doctrine of *res judicata*.**

As an initial matter, Plaintiffs' MMPA claim is barred under the doctrine of *res judicata* because Plaintiffs Save LBI and Dr. Robert Stern already litigated—and lost on the merits—a nearly identical MMPA claim challenging the same Empire Wind LOA at issue here based on the exact same arguments. *See Save LBI I*, 2025 WL 1829543, at *24-29.

> "Under the doctrine of *res judicata*, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction."

*Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009) (citation omitted). "*Res judicata* . . . bars relitigation not only of matters determined in a previous litigation but also ones a party *could have* raised." *Id.* at 491 (citation omitted) (emphasis added). These factors are met here.

First, Plaintiffs' MMPA claim is the same MMPA claim that was already adjudicated in *Save LBI I*. The only difference between Plaintiffs' MMPA claim in *Save LBI I* and the claim here is that the current claim alleges that NMFS violated the MMPA's "small numbers" requirement for Bottlenose Dolphins, while the claim in *Save LBI I* made the exact same legal arguments but with respect to two species of whales. In fact, Plaintiffs use identical language and

rely on the same cases for the summary judgment arguments they made in *Save LBI I*—which the court expressly rejected—and the arguments they assert in their current motion. *Compare Save LBI I*, Dkt. 117-1 at 15-16 (arguing that "a definition of 'small number' that permits the potential taking of as much as 12 percent of the population of a species is plainly against Congress' intent[,]" citing *NRDC v. Evans*, 232 F. Supp. 2d 1003 (N.D. Cal. 2002), *Native Village of Chickaloon v. NMFS*, 947 F. Supp. 2d 1031, 1051 (D. Alaska 2013), and *Alaska Wildlife All. v. U.S. Fish & Wildlife Serv.*, No. 3:21-cv-00209-SLG-KFR, 2023 U.S. Dist. LEXIS 55848, at *5 (D. Alaska Feb. 6, 2023)), *with* Pls.' Br. 6-7 (making the same argument and citing the same cases).

Considering Plaintiffs assert identical legal arguments here as they did in *Save LBI I*, there is no reason why Plaintiffs could not have included their "new" allegations about Bottlenose Dolphins along with their allegations about whales asserted in *Save LBI I*. In fact, Plaintiffs included allegations of alleged harm to dolphins throughout their amended complaint in *Save LBI I* but just failed to include them in their merits briefing.[14] If Plaintiffs wished to pursue the exact same legal arguments but with respect to dolphins instead of whales, they could and should have litigated those claims in their prior action. *See Alaska Forest Ass'n v. Vilsack*, 883 F. Supp. 2d 136, 143 (D.D.C. 2012) ("[D]efining a cause of action for *res judicata* purposes

---

[14] *See e.g., Save LBI I*, Dkt. 81-1 ¶ 44 (alleging that an increase in mortality has been "observed across multiple marine mammal species, namely, both whales and dolphins"); *id.* at 19 (complaint heading titled, "Scientific Evidence Causally Linking the Wind Turbine Marine Characterization to the Dramatic Increase in Dolphin/Whale Deaths"); *id.* ¶ 85 (alleging that a "connection exists between the spate of whale/dolphin strandings and the ongoing offshore wind turbine preparatory work"); *id.* ¶ 133 (alleging that an "exponential increase in whale and dolphin deaths over recent months . . . is clear evidence that Level A harassment takes are occurring"); *id.* ¶ 137 (alleging that "final agency action has [] resulted in quantitative adverse environmental effects, including cumulative harm, to marine mammals, especially dolphins and whales").

turns on defining the claims that '*might* and *should* have been advanced in the first litigation.'" (citing 18 Wright & Miller's Federal Practice & Procedure § 4406 (2d ed. 2002) (emphasis added)).

Indeed, the statistics that Plaintiffs rely on for their arguments—whether they pertain to dolphins or whales—are all pulled from NMFS's LOA analysis which addresses its "small numbers" determinations for 17 marine mammal species. This means that, if Plaintiffs' MMPA claim is not barred by *res judicata*, Plaintiffs could continue to litigate the exact same MMPA arguments over and over again in different courts and different actions, simply by selecting a different species from the LOA each time. The Court should not permit such an outcome, as it would encourage Plaintiffs to continue a practice of "rolling the dice" by presenting the same arguments to different courts and undermine judicial economy interests by imposing a duplicative and unnecessary burden on the courts and the government.

Second, Plaintiffs' MMPA claim involves the same parties or their privies in each action. In *Save LBI I*, Plaintiffs Save LBI and Dr. Stern asserted their MMPA claim against NMFS. Here, the MMPA claim is, again, asserted against NMFS and, although new plaintiffs have been added to the case, those new plaintiffs—Save the East Coast, Inc., Protect Our Coast–LINY, Captain Alan Shinn, and Borough of Seaside Park—are in privity with Save LBI and Dr. Stern. *See Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) ("nonparty preclusion may be justified" when a party was "'adequately represented by someone with the same interests who [wa]s a party' to the suit." (citations omitted)).

The new Plaintiffs' interests are materially the same as the interests of the *Save LBI I* plaintiffs—*i.e.*, they all have alleged aesthetic, recreational, and/or economic interests in the environment and marine mammals in the Project area. *See, e.g, Save LBI I*, Dkt. 81-1 ¶ 15 (Save

LBI alleging an interest in "marine mammals, fish, and other species that inhabit, use, or migrate off the New Jersey and New York coasts; the aesthetic elements of Long Beach Island and the New York Bight; [and] economic interests strongly tied to the maintenance of the environmental features comprising Long Beach Island and the New York Bight"); *id.* ¶ 16 (Dr. Stern alleging an interest in "guard[ing] the natural resources of Long Beach Island and the waters adjacent to it, including the land animals, plants, and marine life"); Compl. ¶ 9 (Save the East Coast alleging an interest in "protect[ing] the ocean and the diverse life it sustains, along with the coastal ecosystems and communities"); *id.* ¶ 10 (Protect Our Coast–LINY alleging an interest in "protect[ing] the environment in all of Long Island's coastal waters; . . . conserv[ing] the natural environments on land and in the sea; preserv[ing] natural habitats; protect[ing] human health and welfare; and, preserv[ing] the community character through orderly development."); *id.* ¶ 11 (Captain Alan Shinn alleging "aesthetic, recreational and economic" interests in the Project area); *id.* ¶ 12 (Borough of Seaside Park alleging an interest in "ocean, recreational and commercial fishing . . . , their marine environment, tourism industry, property values, and quality of life on the Jersey Shore."). Thus, the second element for *res judicata* is met.

Third, the *Save LBI I* court issued a final, valid judgment on the merits. *See* 2025 WL 1829543, at *31; *Save LBI I,* Dkt. 145 (Order). And, in that judgment, the court expressly rejected the same arguments that Plaintiffs assert in this case and have reiterated (almost verbatim) in their motion for preliminary injunction. For example, the *Save LBI I* court rejected Plaintiffs' argument that there is a maximum percentage of 10-12% for NMFS's "small numbers" determinations, "declin[ing] to adopt a bright-line rule based on the *dicta*" in *NRDC v. Evans*, 279 F. Supp. 2d 1129, 1152 (N.D. Cal. 2003). 2025 WL 1829543, at *27. Rather, the court found that NMFS reasonably applied its "proportional approach" to make its "small

numbers" determination, in which NMFS compares the number of individual marine mammals taken to the total population of each species. *Id.* at *25. Additionally, the *Save LBI I* court declined to "second-guess NMFS's reasonable determinations simply because [Plaintiffs] take[] a different view" of NMFS's findings regarding noise source levels, noise transmission, and range affected by noise disturbance. *Id.* at *28 (citation omitted).

Finally, the U.S. District Court for the District of New Jersey is clearly a court of competent jurisdiction. Thus, each of the elements for *res judicata* are met and Plaintiffs' MMPA claim fails on this basis.

### 2. Plaintiffs' MMPA claim has no merit.

Even if Plaintiffs' MMPA claim were not barred by *res judicata*, Plaintiffs have no likelihood of success on the merits because NMFS complied with the MMPA when it issued the LOA. For the same reasons recognized by the *Save LBI I* court discussed above, NMFS's "small numbers" determinations for the marine mammals in the challenged LOA—which were based on its use of a well-established proportional approach—were reasonable and soundly based on a robust record. *See supra* Section V.C.1; *see also, e.g., Save LBI I*, 2025 WL 1829543, at *2 (NMFS's "record consists of, among other things, decision memoranda, proposed and final authorizations, public comments, categorical exclusion memoranda, a biological opinion, an [Environmental Impact Statement], and almost 50,000 pages of scientific and legal references. The sheer volume of documentary support bespeaks the comprehensive and transparent nature of NMFS's administrative process and lends substantial support for that process's thoroughness and reasonableness."); *id.* at n.4 (noting that NMFS's "process to investigate and approve Empire Wind's [] LOA took over two years").

Additionally, Plaintiffs' arguments regarding alleged impacts to Bottlenose Dolphins entirely ignore that the incidental take authorized by the LOA is limited to only Level B Harassment, *i.e.*, behavioral disturbances with no potential for injury or mortality. *See* 89 Fed. Reg. at 11355 ("Take by injury, serious injury, or mortality is not authorized. . . . [T]he authorized incidental take is limited to . . . behavioral disturbance[.]"). Plaintiffs' arguments also ignore that NMFS has thoroughly addressed the anticipated behavioral disturbances through a multitude of mitigation measures that Empire Wind is required to comply with. *See supra* Section III.B. (listing mitigation and monitoring measures required by the LOA). For example, some of the mandatory mitigation measures include the use of NMFS-approved Protected Species Observers to visually observe for marine mammals, with sightings triggering pauses in operations, the use of noise-reducing technology during foundation pile driving, and the use of soft-start pile driving to encourage marine mammals to leave the area before the noise becomes louder. 89 Fed. Reg. at 14443-44. Just as this Court found in denying a similar request for injunctive relief in another offshore wind case, "Plaintiffs fail to take into account the[se] extensive measures . . . to minimize potential harm to [marine mammals] during construction" and have failed to "explain[] why these measures would not be sufficient to protect [marine mammals] during the pendency of this litigation." *CFACT*, 2024 WL 2699895, at *4. Here too, Plaintiffs conveniently ignore critical aspects of the challenged LOA, and their reiterated, unsuccessful arguments from *Save LBI I* fail to demonstrate any violation of the MMPA.

### 3.    Plaintiffs' MMPA claim challenges a superseded LOA.

Further, as a threshold matter, Plaintiffs' MMPA claim also fails because it challenges a superseded LOA. In Plaintiffs' Complaint and their motion for injunctive relief, Plaintiffs challenge NMFS's LOA issued to Empire Wind in February 2024, 89 Fed. Reg. 14442. *See*

Compl. ¶ 30 n.9; Pls.' Br. 1-3 n.2. Indeed, Plaintiffs concede that the February 2024 LOA "forms the predicate of the instant motion[.]" Pls.' Br. 2-3. But the LOA, which Plaintiffs seek to stay in their motion, and which forms the entire basis for their request for injunctive relief, is an inoperative document that was superseded when NMFS issued a new, modified LOA on January 22, 2025. *See* 90 Fed. Reg. 7662. The modified LOA—which Plaintiffs do not challenge, or even reference, in their Complaint or motion—includes modifications to "the LOA Holder's name as well as mitigation and monitoring measures related to vessel strike avoidance, sound field verification reporting, and requirements for passive acoustic monitoring (PAM)." *Id.* While the modified LOA did "not result in any change in the total estimated number of takes of marine mammals," 90 Fed. Reg. at 7662, Plaintiffs are nevertheless not entitled to their requested relief of staying the February 2024 LOA. Indeed, in a similar situation involving a superseded Biological Opinion issued by NMFS, the First Circuit found that, because NMFS issued a new Biological Opinion that superseded the challenged Biological Opinion, the challenged action was no longer causing any injury that could be redressed by the court. *Seafreeze Shoreside, Inc. v. U.S. Dep't of the Interior*, 123 F.4th 1, 20 (1st Cir. 2024) (finding that the "significance of [] NMFS's issuance of [an] unchallenged superseding [] biological opinion" was that it "precluded any basis for finding that . . . [the] violation complained of was having an ongoing effect," and thus there was "no basis . . . for either enjoining or unwinding the project . . . or for concluding that [plaintiffs'] injury was redressable in any way"). Plaintiffs' request for injunctive relief premised on the superseded LOA should therefore be denied.

### 4. Plaintiffs waived their right to challenge the LOA because they did not submit public comments.

Plaintiffs' MMPA claim should also be rejected because Plaintiffs failed to raise their concerns during the administrative process, during either of the two public comment periods, and

23

thereby waived the right to challenge the LOA. *See supra* Section III.B n.6, n.7 (links to the public comments on the LOA, showing that Plaintiffs failed to submit any comments). It is an "underlying principle of administrative law" that courts may not review arguments not raised during an agency proceeding. *Sims v. Apfel*, 530 U.S. 103, 112 (2000) (O'Connor, S. concurring in part) ("In most cases, an issue not presented to an administrative decisionmaker cannot be argued for the first time in federal court."). This doctrine, known as "issue exhaustion," is essential to the integrity of the administrative process and is strictly enforced. *See United States v. L.A. Tucker Truck Lines, Inc*., 344 U.S. 33, 37 (1952).

Because Plaintiffs failed to utilize the agency's public comment process to seek resolution of the issues they assert in this lawsuit, they have waived the right to challenge the LOA in federal court. *See, e.g., Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002) (per curiam) ("[I]ssues not raised in comments before the agency are waived and this Court will not consider them."); *Cook Inletkeeper v. Raimondo*, 533 F. Supp. 3d 739, 752 (D. Alaska 2021) ("Plaintiffs [] waived their challenge to NFMS's small numbers determination [in an Incidental Take Authorization issued under the MMPA] by failing to raise it before the agency during administrative proceedings. . . ."); *Padgett v. Surface Transp. Bd.*, 804 F.3d 103, 109 (1st Cir. 2015) ("The failure to raise an argument before an agency constitutes a waiver of that argument on judicial review. We are barred from considering them because they were not presented to the agency." (citation modified)); *Adams v. U.S. EPA*, 38 F.3d 43, 50 (1st Cir. 1994) (party waived the right to pursue challenge of Clean Water Act permit where he did not raise his concerns during the agency's public comment period). Indeed, there is an important reason behind the doctrine of issue exhaustion: by declining to use the agency's administrative process to raise objections, a party deprives the agency of the opportunity to consider those objections before

taking final action. *See Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752, 764-65 (2004) (plaintiffs "forfeited any objection" because they "did not raise [their] particular objections" in comments on the agency's proposed action, and the agency was thus "not given the opportunity to examine" those objections).

Because Plaintiffs failed to present any of their MMPA arguments during the public comment periods on the challenged LOA, Plaintiffs' MMPA claim fails and the Court should deny Plaintiffs' motion on this basis.

**D.      The balance of the equities and the public interest weigh against an injunction.**

As noted above, the third and fourth factors of the preliminary injunction test—balancing the equities and the public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citation omitted). Here, these considerations tilt in Federal Defendants' favor.

The public interest would undoubtedly be harmed by Plaintiffs' unwarranted interference with government-issued permits and approvals. The public is best served when the government is permitted to use the expertise of its federal agencies to decide issues within their areas of specialization, such as the complex scientific and environmental matters at issue here. Plaintiffs attempt to improperly influence this process by asking the court to grant "emergency" relief on the basis of their layman opinions. Allowing such an outcome would harm the public interest by unnecessarily disrupting years of work and analysis that Federal Defendants conducted in connection with issuing the challenged Project approvals.

## VI.    Conclusion

For the foregoing reasons, the Court should deny Plaintiffs' request for injunctive relief.


Date: September 5, 2025                    Respectfully submitted,


ADAM R.F. GUSTAFSON
United States Department of Justice
Acting Assistant Attorney General
Environment and Natural Resources Division

*/s/ Michelle M. Spatz*
MICHELLE M. SPATZ
Trial Attorney (D.C. Bar No. 1044400)
Wildlife & Marine Resources Section
(202) 598-9741
michelle.spatz@usdoj.gov
AMBER DUTTON-BYNUM
Trial Attorney (D.C. Bar No. 1778319)
Natural Resources Section
(202) 330-2649
Amber.Dutton-Bynum@usdoj.gov

*Counsel for Federal Defendants*