## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAVE LONG BEACH ISLAND, INC., *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:25-cv-02214-CJN |
| UNITED STATES DEPARTMENT OF COMMERCE, *et al.*, | Judge Carl J. Nichols |
| *Federal Defendants*, | |
| and | |
| EMPIRE OFFSHORE WIND LLC and EMPIRE LEASEHOLDER LLC, | |
| *Intervenor-Defendants*. | |

## INTERVENOR-DEFENDANT EMPIRE WIND'S
## REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

Tyler S. Johnson (DC Bar #1003009)
**BRACEWELL LLP**
701 Fifth Avenue
Suite 6850
Seattle, Washington 98104
Telephone: (206) 204-6211
Facsimile: (800) 404-3970
Email: ty.johnson@bracewell.com

Ann D. Navaro (DC Bar #1643328)
David A. Super (DC Bar #429359)
Taylor M. Stuart (DC Bar #1671892)
**BRACEWELL LLP**
2001 M Street NW, Suite 900
Washington, DC 20036
Telephone: (202) 828-5800
Facsimile: (800) 404-3970
Email: ann.navaro@bracewell.com
        david.super@bracewell.com
        taylor.stuart@bracewell.com

Date: September 25, 2025

*Counsel for Intervenor-Defendants*
*Empire Offshore Wind LLC and Empire*
*Leaseholder LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ........................................................................................................... 1

I.    Plaintiffs' OCSLA Claim Should Be Dismissed For Lack Of Subject
      Matter Jurisdiction. ........................................................................................... 2

      A.    Plaintiffs Are Precluded From Bypassing OCSLA's 60-Day Notice
            Requirement Through Resort To The APA. .................................................. 2

      B.    Plaintiffs Have Not Shown Their Legal Interests Will Be
            Immediately Affected To Warrant Exemption From The Notice
            Requirement. ........................................................................................... 5

      C.    Plaintiffs' NEPA Claim Should Be Dismissed Because Plaintiffs
            Failed To Allege Sufficient Administrative Participation Required
            By FAST-41. ........................................................................................... 7

            1.    FAST-41 requires that would-be plaintiffs comment on an
                  agency's environmental review "for a covered project" in
                  order to challenge decisions related to that project. ....................... 7

            2.    Plaintiffs concede that they did not comment on the
                  environmental review for the Empire Wind Project. ....................... 8

            3.    The Court can look to the public record as evidence that
                  Plaintiffs' NEPA claim is barred under FAST-41. ....................... 10

      D.    Plaintiffs' MMPA Claim Is Precluded By The Doctrines Of *Res
            Judicata* And Collateral Estoppel. ......................................................... 12

            1.    Plaintiffs were adequately represented in *SLBI I*. ..................... 13

            2.    The *SLBI I* court issued a final judgment on the merits. ............. 18

            3.    *SLBI I* concerned surveys and pile driving and involved the
                  same facts as this case. ......................................................... 19

II.   CONCLUSION ................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amerada Hess Corp. v. Dep't of Interior*,
  170 F.3d 1032 (10th Cir. 1999) .................................................................5

*Basel Action Network v. Mar. Admin.*,
  370 F. Supp. 2d 57 (D.D.C. 2005) ...........................................................4

*Bennett v. Spear*,
  520 U.S. 154 (1997) ...................................................................................2

*Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*,
  569 F.3d 485 (D.C. Cir. 2009) ................................................................19

*Cont'l W. Ins. Co. v. Fed. Hous. Fin. Agency*,
  83 F. Supp. 3d 828 (S.D. Iowa 2015) ...............................13, 14, 15, 16

*Covad Commc'ns Co. v. Bell Atl. Corp.*,
  407 F.3d 1220 (D.C. Cir. 2005) ..............................................................12

*Duke Energy v. FERC*,
  150 F. Supp. 2d 150 (D.D.C. 2001) .........................................................4

*Fisheries Survival Fund v. Haaland*,
  858 F. App'x 371 (D.C. Cir. 2021) ...........................................................4

*Green Oceans v. United States Dep't of the Interior*,
  No. 1:24-CV-141-RCL, 2025 WL 973540 (D.D.C. Apr. 1, 2025) ..............2, 3, 4, 5

*Gulf Restoration Network v. Salazar*,
  683 F.3d 158 (5th Cir. 2012) .....................................................................3

*Hornbeck Offshore Servs., L.L.C. v. Salazar*,
  696 F. Supp. 2d 627 (E.D. La. 2010) .......................................................5

*LaVergne v. United States House of Representatives*,
  847 F. App'x 1 (D.C. Cir. 2021) ..............................................................19

*Midwest Disability Initiative v. JANS Enters., Inc.*,
  929 F.3d 603 (8th Cir. 2019) ...................................................................14

*Murphy Expl. & Prod. Co. v. U.S. Dep't of Interior*,
  167 F. Supp. 2d 1 (D.D.C. 2000) ..............................................................5

*Quick v. EduCap, Inc.*,
  318 F. Supp. 3d 121 (D.D.C. 2018) ........................................................19

*Save Long Beach Island, et al. v. Dep't of Comm.*,
  No. CV 23-1886 (RK) (JBD), 2025 WL 1829543 (D.N.J. July 2, 2025)
  ("*SLBI I*") ...........................................................................................................1, 17, 18, 19

*Scolaro v. D.C. Bd. of Elections & Ethics*,
  104 F. Supp. 2d 18 (D.D.C. 2000) .................................................................................12

*Seafreeze Shoreside et al., v. Dept' of the Interior et al.*,
  Case No. 1:21-cv-03276, Dkt. No. 1 (D. Mass. filed Dec. 15, 2021)................................3, 16

*Shell Offshore, Inc. v. Dep't of Interior*,
  997 F. Supp. 23 (D.D.C. 1998) .......................................................................................5

*Swisher Int'l, Inc. v. United States Food & Drug Admin.*,
  No. 22-CV-954 (CRC), 2024 WL 4119480 (D.D.C. Sept. 9, 2024) .....................................13

*Taylor v. Sturgell*,
  553 U.S. 880 (2008)........................................................................................13, 14, 15

*Zellars v. United States*,
  578 F. Supp. 2d 1 (D.D.C. 2008) ...................................................................................19

**Statutes**

Administrative Procedure Act,
  5 U.S.C. 706 *et seq.*.................................................................................................2, 3, 4, 5

Fixing America's Surface Transportation Act Title 41,
  42 U.S.C. § 4370m-6 ......................................................................1, 7, 8, 9, 10, 11, 12

Marine Mammal Protection Act,
  16 U.S.C. § 1361 *et seq.*.................................................................1, 2, 12, 15, 19, 20

National Environmental Policy Act,
  42 U.S.C. § 4321 *et seq.*.................................................................1, 7, 8, 10, 11, 12

Outer Continental Shelf Lands Act,
  43 U.S.C. § 1337 *et seq.*.................................................................1, 2, 3, 4, 5, 6

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ...........................................................................11

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................12

**Regulations**

86 Fed. Reg. 31524 (June 14, 2021) ....................................................................................9

89 Fed. Reg. 11342 (Feb. 14, 2024) ...................................................................................19

**Other Authorities**

Borough of Seaside Park, New Jersey, Mayor and Council Work Session Minutes
(Feb. 9, 2023), https://seasideparkboroughnj.documents-on-
demand.com/Document/b71d5098-ecac-4641-861a-9d7ac56623a3/02-09-
2023%20MC%20Minutes%20(Work%20Session).pdf...........................................................16

Borough of Seaside Park, New Jersey, Mayor and Council Work Session Minutes
(Apr. 13, 2023), https://seasideparkboroughnj.documents-on-
demand.com/Document/f1a82aeb-54b2-4ae9-9c08-0137de42e2da/04-13-
2023%20MC%20Agenda%20(Work%20Session).pdf ........................................................16

Borough of Seaside Park, New Jersey, Mayor and Council Work Session Minutes
(June 5, 2025), https://seasideparkboroughnj.documents-on-
demand.com/Document/10cb2391-b840-f011-a450-000c29a59557/06-05-
2025%20MC%20Agenda%20(Work%20Session).pdf)........................................................16

Comments of Bob Stern on BOEM's Proposed Sale Notice (PSN), Atlantic Wind
Lease Sale 8 for Commercial Leasing for Wind Power on the Outer
Continental Shelf (OCS) in the New York Bight, Docket No. BOEM-2021-
0033 (July 22, 2021), https://www.regulations.gov/comment/BOEM-2021-
0033-0054 ............................................................................................................................9

Empire Wind EIS, Appendix B (References Cited) (Sept. 2023),
https://www.boem.gov/renewable-energy/state-
activities/empirewindfeisappbreferences-cited-0 ..................................................................10

Empire Wind EIS, Vol. 1 at S-1-S-10 (Executive Summary) (Sept. 2023),
https://www.boem.gov/renewable-energy/state-activities/empirewindfeisvol1-
0..........................................................................................................................................10

Empire Wind's COP Approval, https://www.boem.gov/renewable-energy/state-
activities/appvl-ltr-empire-wind-ocs-0512 .............................................................................5

Save the East Coast and Protect Our Coast-LINY, Joint Petition to Revoke
Empire Wind's Clean Air Act Permit, Mar. 25, 2025, https://save-the-east-
coast.org/petition-to-reopen-empire-wind-clean-air-permit/ ..................................................15

Save Long Beach Island and Save the East Coast hosted and participated in the
"Hands Across the Beaches" anti-offshore wind event in July 2023,
https://nj1015.com/hands-across-the-beaches-protest-wind-turbine-
installation/............................................................................................................................15

**INTRODUCTION**

Plaintiffs' opposition ("Opposition")[1] to Intervenor-Defendants Empire Offshore Wind LLC and Empire Leaseholder LLC's (collectively, "Empire Wind") motion to dismiss Plaintiffs' Complaint ("Motion")[2] does nothing to ward off dismissal. Indeed, it confirms that the Motion should be granted. First, Plaintiffs' claim under the Outer Continental Shelf Lands Act ("OCSLA") should be dismissed because Plaintiffs undisputedly failed to comply with OCSLA's 60-day notice requirement. Plaintiffs' efforts to excuse that failure are baseless.

Second, Plaintiffs' claim under the National Environmental Policy Act ("NEPA") should be dismissed because Plaintiffs failed to comply with the requirements of the Fixing America's Surface Transportation Act ("FAST-41"), which Congress enacted to prevent exactly this circumstance—namely, litigation by plaintiffs who failed to avail themselves of the opportunity to be heard in front of the agency before the challenged decision was made. The public record clearly indicates that no Plaintiff provided comments during the environmental review process for the Empire Wind Project ("Project"), despite being given several opportunities to do so. Contrary to Plaintiffs' arguments, providing comments on different federal actions in an *unrelated* leasing process plainly does not satisfy the clear requirements of FAST-41.

Finally, for purposes of applying *res judicata* and collateral estoppel here, Plaintiffs fail to distinguish their duplicative claim under the Marine Mammal Protection Act ("MMPA") filed in this lawsuit from the identical claim they made in the U.S. District Court for the District of New Jersey in *Save Long Beach Island, et al. v. U.S. Department of Commerce, et al.*, No. CV 23-1886 (RK) (JBD), 2025 WL 1829543 (D.N.J. July 2, 2025) ("*SLBI I*"), which the New Jersey court

---

[1] Dkt. No. 23.
[2] Dkt. No. 20-1 (Empire Wind's Memorandum in Support of its Motion to Dismiss).

disposed of on summary judgment in July 2025.  Plaintiffs' arguments seeking to avoid application of *res judicata* and collateral estoppel to the MMPA claim are baseless and should be rejected. For all these reasons, Plaintiffs' Complaint should be dismissed in its entirety.

## I.    Plaintiffs' OCSLA Claim Should Be Dismissed For Lack Of Subject Matter Jurisdiction.

Plaintiffs seek to excuse their undisputed failure to comply with OCSLA's 60-day notice requirement by arguing that (1) they are pursuing their OCSLA claim under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. 706 *et seq*., rather than OCSLA's citizen suit provision; and (2) the alleged OCSLA violation has immediately affected their legal interest.  Opposition at 12-16.  These arguments are baseless.

### A.    Plaintiffs Are Precluded From Bypassing OCSLA's 60-Day Notice Requirement Through Resort To The APA.

Regarding the OCSLA notice requirement, the case law in this Court could not be clearer: "'Where plaintiffs may otherwise proceed under the citizen suit provision, they should not be allowed to bypass the explicit requirements of [OCSLA] established by Congress through resort to ... the APA.'"  *Green Oceans v. United States Dep't of the Interior*, No. 1:24-CV-141-RCL, 2025 WL 973540, at *13 (D.D.C. Apr. 1, 2025) (citing *Basel Action Network v. Mar. Admin.*, 370 F. Supp. 2d 57, 76 (D.D.C. 2005)); *see also Bennett v. Spear*, 520 U.S. 154, 161-162 (1997) (citing 5 U.S.C. § 704) ("[T]he APA by its terms independently authorizes review only when 'there is no other adequate remedy in a court.'").  Here, Plaintiffs allege that BOEM violated OCSLA when it issued Empire Wind's COP Approval.[3]  To make this claim, Plaintiffs "'may otherwise

---

[3] *See* Dkt. No. 1 at ¶ 90 (alleging BOEM's approval of the Project "contravenes the aforesaid OCSLA provisions" at 43 U.S.C. § 1337(p)(4); *see also* 43 U.S.C. § 1349(a)(1) (allowing citizen suits against the United States "for any alleged violation of any provision of" OCSLA "or any regulation promulgated under [OCSLA]," or of the terms of any permit or lease issued by the U.S. Department of the Interior).

proceed under the citizen suit provision'" of OCSLA, *Green Oceans*, 2025 WL 973540, at *13—as numerous other plaintiffs have done since OCSLA was enacted.[4]  Therefore, as this Court has expressly held, Plaintiffs may not "'bypass the explicit requirements'" of OCSLA's notice requirement "'through resort to the APA.'"  *Green Oceans*, 2025 WL 973540, at *13.

Plaintiffs argue that *Green Oceans* is inapplicable because, there, the plaintiffs initially brought their claim under OCSLA's citizen suit provision but later amended their complaint to bring the OCSLA claim under the APA, which the Court deemed to be "shoehorning" the OCSLA claim into an APA claim.  Opposition at 13.  But that procedural distinction has no bearing on the holding in *Green Oceans*: the Court dismissed the plaintiffs' OCSLA claim because, where a party may proceed under OCSLA's citizen suit provision (like this case), the party cannot "'bypass the explicit requirements'" of OCSLA's notice provision "'through resort to the APA.'"  *Green Oceans*, 2025 WL 973540, at *13.

The *Green Oceans* holding makes sense, because allowing a party to proceed under the APA rather than OCSLA's citizen suit provision without providing notice would effectively nullify OCSLA's notice requirement altogether in lawsuits against the government, as all parties raising an OCSLA challenge would simply allege that the agency's OCSLA violation equated to

---

[4] Plaintiffs challenging decisions to allow, or disallow, offshore development in both the wind and oil and gas context routinely rely on OCSLA's citizen suit provision.  *See*, *e.g.*, *Seafreeze Shoreside et al., v. Dept' of the Interior et al.*, Case No. 1:21-cv-03276, Dkt. No. 1 at ¶¶ 27-28 (D. Mass. filed Dec. 15, 2021) (challenging the Vineyard Wind offshore wind project "[p]ursuant to the citizen suit provisions of OCSLA, ESA and CWA" and noting that "Plaintiffs sent a 60-day notice of intent … to sue the Federal Defendants over their respective failures to comply with OCSLA, ESA and CWA in reviewing and approving the Vineyard Wind Construction and Operations Plan."); *Gulf Restoration Network v. Salazar*, 683 F.3d 158, 171 (5th Cir. 2012) (environmental groups filed citizen suit under OCSLA challenging government's approval of offshore drilling plans on the basis that they violated OCSLA).

the agency acting "contrary to law" in violation of the APA.  Under those circumstances, notice would *never* be required.[5]

Similarly, this Court's holdings in *Duke Energy v. FERC*, 150 F. Supp. 2d 150, 155 (D.D.C. 2001) and *Basel Action Network v. Maritime Administration*, 370 F. Supp. 2d 57, 76 (D.D.C. 2005), were not, as Plaintiffs suggest (*see* Opposition at 9 n.12), dependent on the plaintiffs' efforts to sue under the APA *after* suing under a statute's citizen suit provision.  Rather, those cases, like *Green Oceans*, held that, where a citizen suit provision authorizes their claim, a claimant may not seek judicial review under the APA to evade the citizen suit provision's requirements.  *See Duke Energy*, 150 F. Supp. 2d at 155-56 (holding that OCSLA's 60-day notice requirement "bars *all cases* which do not comply with the" 60-day notice requirement, and therefore plaintiffs could not proceed under APA without providing 60-day notice) (emphasis added); *Basel Action Network*, 370 F. Supp. 2d at 76 (holding that plaintiffs could not evade 60-day notice requirement of Toxic Substances Control Act by proceeding under APA because statute contained a citizens suit provision authorizing plaintiffs' claim).  As expressly stated in *Basel Action Network*, "APA jurisdiction is dependent upon the lack of an alternative adequate remedy . . . For these reasons, judicial review under the APA is precluded when a remedy is available under a citizen suit provision of an environmental statute."  370 F. Supp. 2d at 76 (citations omitted).  Here, a remedy for Plaintiffs is plainly available under OCSLA's citizen suit provision.

The inverse is also true, as is demonstrated by the cases upon which the Plaintiffs rely.  *See* Opposition at 13-16.  Where (unlike this case) a remedy is *not* available under a statute's citizen

---

[5] Notably, Plaintiffs do not address or acknowledge *Fisheries Survival Fund v. Haaland*, 858 F. App'x 371, 373-74 (D.C. Cir. 2021), where the D.C. Circuit upheld this Court's dismissal of a challenge to Empire Wind's lease, in part, because the plaintiff failed to provide the requisite 60-day notice under OCSLA.

suit provision because of the nature of the specific claim, then the APA *is the appropriate remedy*. That is the unremarkable holding of the cases on which Plaintiffs rely to argue that they may proceed under the APA.[6]

**B.      Plaintiffs Have Not Shown Their Legal Interests Will Be Immediately Affected To Warrant Exemption From The Notice Requirement.**

Plaintiffs fail to support their argument that they are exempt from OCSLA's 60-day notice requirement because the alleged violation would have an immediate effect on their legal interest. First, BOEM issued its approval of the Project in February 2024.[7]  Even assuming BOEM had violated OCSLA in issuing the approval (it did not), that purported violation occurred *at the time of issuance*—not in July 2025 when Plaintiffs filed their Complaint in this case, which was more

---

[6] *See* Opposition at 13-16 (citing *OXY USA Inc v. Babbitt*, 122 F.3d 251, 256-59 (5th Cir. 1997) (holding that lessees' challenge to Interior's method for calculating royalties "cannot constitute a 'violation' as contemplated by the citizen suit provision," and therefore APA was the appropriate method for challenging the agency's action); *Murphy Expl. & Prod. Co. v. U.S. Dep't of Interior*, 167 F. Supp. 2d 1, 10 (D.D.C. 2000) (holding that lessee was not permitted to challenge Interior's failure to refund overpayments of royalties via OCSLA's citizen suit provision because lessee had not alleged Interior violated OCSLA); *Shell Offshore, Inc. v. Dep't of Interior*, 997 F. Supp. 23, 34-35 (D.D.C. 1998) (holding that lessees could not use OCSLA's citizen suit provision to challenge Interior's miscalculation of royalties); *Amerada Hess Corp. v. Dep't of Interior*, 170 F.3d 1032, 1034-35 (10th Cir. 1999) (holding that lessee could not challenge Interior's refusal to refund royalty overpayments, which constituted "a decision of the Secretary rendered in fulfillment of his duties under [OCSLA]" pursuant to OCSLA's citizen suit provision, which only authorized challenges to violations of the statute).  Plaintiffs put substantial weight on a decision by the Eastern District of Louisiana in *Hornbeck Offshore Servs., L.L.C. v. Salazar*, 696 F. Supp. 2d 627, 636 (E.D. La. 2010).  Opposition at 14-16.  In *Hornbeck*, the Court found that an offshore oil and gas service provider was permitted to proceed with its OCSLA-related claims against the government under the APA, only where "the issue [did] not seem to be whether the Secretary is in 'violation' of OCSLA or its regulations." *Hornbeck*, 696 F. Supp. 2d at 636 (citing *OXY*, 122 F.3d at 257).  Had the plaintiffs in *Hornbeck* alleged violations of OCSLA, as Plaintiffs do here, they would have been required to proceed under the citizen suit provision. *See Green Oceans*, 2025 WL 973540, at *13.  In any event, the court in *Hornbeck* found that OCSLA's 60-day notice was not required because the plaintiffs had "suffered an immediate effect to their legal interests" as a result of the alleged OCSLA violation. *Hornbeck*, 696 F. Supp. 2d at 636, n.8.  As explained below, that exception to the 60-day notice requirement does not apply here.

[7] Empire Wind's COP Approval is available online at https://www.boem.gov/renewable-energy/state-activities/appvl-ltr-empire-wind-ocs-0512.

than 17 months after Plaintiffs initiated their claims challenging Empire Wind's Letter of Authorization in New Jersey in March 2024. The OCSLA notice provision does not allow Plaintiffs to strategically time their lawsuit to a point of their choosing in an effort to manufacture an "immediate effect."

Second, in claiming they were "immediately affected," Plaintiffs assert that "Empire Wind's offshore construction (monopile installation, pile driving) began in June 2025...." Opposition at 16. But this allegation does not remotely establish how "the alleged violation...would immediately affect a legal interest of the plaintiff." 43 U.S.C. § 1349(a)(3). Moreover, even assuming, for the sake of argument, that Plaintiffs' legal interest could have been impacted by installation of the monopile foundations, that activity was well underway by the time Plaintiffs filed their Complaint. *See* Dkt. No. 19-2 at ¶ 7. Plaintiffs fail to show that any alleged violation would "immediately affect" their legal interest to warrant exemption from the 60-day notice requirement.

Finally, the "immediately affect[ed]" exemption, even assuming it were applicable (it is not), provides that an action may be filed "*immediately after notification* of the alleged violation." 43 U.S.C. § 1349(a)(2-3) (emphasis added). Thus, even if it were true that Plaintiffs expected to be immediately affected by the government's alleged violation of OCSLA, Plaintiffs were *still* required to provide notice of the alleged violation, even if such notice did not come 60 days prior to filing their lawsuit. Here, Plaintiffs failed to submit *any* notice whatsoever and thus could not benefit from the "immediately affect[ed]" exemption even assuming the exemption were otherwise applicable.

### C.  Plaintiffs' NEPA Claim Should Be Dismissed Because Plaintiffs Failed To Allege Sufficient Administrative Participation Required By FAST-41.

Plaintiffs recognize that they failed to comment on the *Project's* environmental review, as expressly required by FAST-41.  To avoid the legal consequences of that failure, Plaintiffs argue that the comments they did make on a separate and unrelated agency action, a notice of proposed sale of offshore leases unrelated to the Empire Wind Project, were somehow "within the ambit of Empire Wind's environmental review" and, thus, satisfied the requirements of FAST-41. Opposition at 8.  Plaintiffs are wrong.  Their tortured attempt to shoehorn their non-Project comments into satisfying the explicit FAST-41 requirements relating to the specific Project at issue should be rejected and Plaintiffs' NEPA claim should be dismissed.

### 1.  FAST-41 requires that would-be plaintiffs comment on an agency's environmental review "for a covered project" in order to challenge decisions related to that project.

FAST-41 expressly requires that a claim "seeking judicial review of any *authorization* issued by a Federal agency *for a covered project* shall be barred unless—" "(i) the claim is filed by a party that submitted a comment during *the environmental review; and* (ii) any commenter filed a sufficiently detailed comment so as to put the lead agency on notice of the issue on which the party seeks judicial review, or the lead agency did not provide a reasonable opportunity for such a comment on that issue."  42 U.S.C. § 4370m-6(a)(1) (emphases added).  This language unambiguously requires that a would-be plaintiff challenging the authorization for the "covered project" actually comment on the environmental review *for that covered project*.  Here, that means Plaintiffs were required to comment on the environmental review for the Empire Wind Project, the approval for which they challenge here.  Generic comments on an unrelated Proposed Sale Notice that do not mention or discuss the Empire Wind Project do not suffice.  Any contrary interpretation of the FAST-41 participation requirement would render it utterly meaningless.

Plaintiffs ask this Court to adopt a counter-textual interpretation of FAST-41's language that would eviscerate the language's purpose. Plaintiffs argue that "the phrase, 'environmental review'" in 42 U.S.C. § 4370m–6(a)(1)(B) does not mean project-specific environmental review. Opposition at 8. Rather, Plaintiffs argue that "'environmental review'" should be expansively defined to mean *any* environmental review conducted by the agency that Plaintiffs claim is relevant, even if it undisputedly did not pertain to the specific "covered project" being challenged and was not relied upon or referenced by the agency in issuing its "authorization" for the "covered project." *Id.* at 8-9. Under that effectively limitless interpretation, a party challenging the authorization of an infrastructure project could comment on the environmental review of *any* infrastructure project other than the project being challenged, so long as the party's comments pre-dated issuance of the environmental document for the challenged infrastructure project.

Plaintiffs' interpretation is contrary to the plain language of FAST-41 as it would improperly allow virtually any comment submitted in a public NEPA proceeding to satisfy FAST-41's statutory standard. This is directly contrary to the purpose of FAST-41, which, on its face, is intended to accelerate the construction of infrastructure by providing more certainty to specific projects by narrowing the opportunity for litigation over agency decisions and excluding would-be plaintiffs who fail to comment on the specific action before the agency.

### 2. Plaintiffs concede that they did not comment on the environmental review for the Empire Wind Project.

Plaintiffs concede that they did not comment on the environmental review for the Empire Wind Project and instead allege that they commented generically on the leasing process for *other* offshore wind leases. Opposition at 8-11. Plaintiffs suggest that these generic comments on an unrelated Proposed Sale Notice, which was not even an "environmental review," were somehow "pertinent to the process of determining what level and type of NEPA documents were required

relevant to the Empire Wind environmental review" because the comments were filed approximately one month after BOEM initiated Empire Wind's environmental review. *Id.* at 10-11. But this assertion is nothing more than a concession that Plaintiffs failed to comment on the environmental review for the *Empire Wind Project.*

Plaintiffs submitted only generic comments in July 2021 on a Proposed Sale Notice announcing the sale of eight leases that were offered for sale more than four years *after* Empire Wind received its lease.[8] Those comments plainly fail to satisfy the requirements of FAST-41. First, the proceeding seeking public input on the Proposed Sale Notice is not an "environmental review" because it only sought comments on BOEM's proposal to hold an auction to issue certain leases covering areas identified by BOEM (none of which involved the area included in the Empire Wind Project's lease).[9] The "environmental review" for BOEM's decision to hold a lease sale for the eight lease areas auctioned off in 2021 was in a different proceeding.[10]

Second, even assuming this Proposed Sale Notice proceeding had qualified as an "environmental review" (it did not), Plaintiffs' comments in that proceeding did not address any specific "covered project" under FAST-41 and certainly did not even mention, let alone discuss, the Empire Wind Project or its lease area. *See supra* n.8 (Plaintiffs' 2021 PSN Comments). Nor were Plaintiffs' comments in any way "pertinent to the process of determining what level and type

---

[8] *See* Comments of Bob Stern on BOEM's Proposed Sale Notice (PSN), Atlantic Wind Lease Sale 8 for Commercial Leasing for Wind Power on the Outer Continental Shelf (OCS) in the New York Bight, Docket No. BOEM-2021-0033 (July 22, 2021) ("Plaintiffs' 2021 PSN Comments"), *available at* https://www.regulations.gov/comment/BOEM-2021-0033-0054.

[9] *See* 86 Fed. Reg. 31524, 31527 (June 14, 2021) (2021 Proposed Sale Notice seeking comment on size of leases and structure of auction in Dkt. No. BOEM–2021–0033).

[10] For this particular leasing decision, BOEM issued a notice of its intent to prepare an environmental assessment to consider the potential environmental consequences of certain surveys and related site assessment activities. BOEM issued this notice, collected comments on the notice, and ultimately issued the draft environmental assessment in a separate docket, Docket No. BOEM-2021-0021.

of NEPA documents were required relevant to the Empire Wind environmental review," as Plaintiffs allege.  Opposition at 8.  Instead, on the very first page of the comments, Plaintiffs "ask[ed] that *the lease sales being pursued here*"—*i.e.,* not the Empire Wind Project's lease—"be suspended because the BOEM plan identifying certain wind energy areas for lease versus others should have been preceded by an [EIS] pursuant to [NEPA]."  *See supra* n.8 (Plaintiffs' 2021 PSN Comments) at 1.  In sum, Plaintiffs admit the 2021 Proposed Sale Notice they commented on "did not specifically include the lease area of Empire Wind" and was not a "project-specific" environmental review of Empire Wind.  Opposition at 10.[11]  Thus, Plaintiffs effectively concede they did not comment on the Empire Wind Project's environmental review in violation of FAST-41.

### 3.    The Court can look to the public record as evidence that Plaintiffs' NEPA claim is barred under FAST-41.

Plaintiffs suggest that the Court should not decide whether Plaintiffs complied with FAST-41's comment requirement until later in this action after the government compiles the administrative record.  But there is no legitimate need to wait.  The facts underlying the scope of Plaintiffs' comments are undisputed and the Court can readily decide the legal ramifications of those undisputed facts.  Plaintiffs' approach would defeat the very purpose of FAST-41's judicial review provision, which prevents eleventh-hour litigation by claimants who failed to make their

---

[11] Plaintiffs also suggest that their comments on the 2021 Proposed Sale Notice were sufficient because "Empire Wind's project specific EIS was plausibly tiered from the earlier leasing within the NY Bight."  Opposition at 11.  This is patently false.  Empire Wind's EIS was not tiered from any other environmental document, and the two proceedings are completely unrelated to one another.  *See* Empire Wind EIS, Vol. 1 at S-1—S-10 (Executive Summary) (Sept. 2023), *available at* https://www.boem.gov/renewable-energy/state-activities/empirewindfeisvol1-0; Empire Wind EIS, Appendix B (References Cited) (Sept. 2023), *available at* https://www.boem.gov/renewable-energy/state-activities/empirewindfeisappbreferences-cited-0.

voices heard during the multi-year administrative review process regarding *the Project* despite ample opportunity to do so.

Plaintiffs' reliance on *Mayor & City Council of Ocean City* (*see* Opposition at 6-7) is misplaced. Pointing to that case, Plaintiffs suggest that their submission of comments in an entirely different administrative proceeding—*i.e.*, relating to BOEM's 2021 issuance of eight *other* offshore leases, not the Empire Wind Project's lease—somehow creates a factual question as to whether Plaintiffs commented on the environmental review for *the Project*. Opposition at 6-7. But there is no fact question here: Plaintiffs undisputedly did *not* comment on *the Project*. Indeed, if anything, the circumstances of *Mayor & City Council of Ocean City* support Empire Wind's position and refute the notion that Plaintiffs submitted sufficient comments in this case. *See* No. CV SAG-24-3111, 2025 WL 1827963, at *5 (D. Md. July 2, 2025) (rejecting argument that court should dismiss all sclaims, not just NEPA claim, where failure to exhaust FAST-41 was not clear, making the "exhaustion-based claims . . . best adjudicated on complete factual record"). There, five plaintiffs commented on the project-specific environmental review, and there was a dispute only over whether their comments covered all issues the plaintiffs complained of. *See id*. Case No. 1:24-cv-3111, Dkt. No. 46-1 at 36 (D. Md. 2025) (plaintiffs' filing in *Mayor & City Council of Ocean City*, explaining that the offshore wind project company "admit[ted] that at least five Plaintiffs (Ocean City, Fenwick Island, Worcester County, Pawloski, and Fager's Island) filed comments or commented during a public meeting during the NEPA review process."). Here, it is undisputed that Plaintiffs failed to file *Project*-specific comments.

Finally, this Court is permitted to look to "materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case" pursuant to Rule 12(b)(1), and may also take judicial notice of a "record of another proceeding to avoid

unnecessary proceedings when an undisputed fact on the public record makes it clear that the plaintiff does not state a claim upon which relief could be granted" pursuant to Rule 12(b)(6). *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citations omitted); *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (internal quotation marks omitted). Indeed, even if a decision on Plaintiffs' non-compliance with FAST-41 were deferred until the summary judgment phase, Empire Wind and the Federal Defendants would just point to the same public information demonstrating that Plaintiffs did not comment on the Empire Wind Project's environmental review. *See* Motion at n.17 (providing links to public dockets containing all comments made on the Empire Wind Project's environmental review). Simply put, the scope of Plaintiffs' generic 2021 comments relating to other leases is not going to miraculously change by waiting to decide this threshold jurisdictional issue. The Court should address this issue now and reject Plaintiffs' attempts to evade FAST-41's clear statutory requirements. Plaintiffs' NEPA claim should be dismissed for lack of subject matter jurisdiction.

### D.   Plaintiffs' MMPA Claim Is Precluded By The Doctrines Of *Res Judicata* And Collateral Estoppel.

Empire Wind has established that Plaintiffs' MMPA claim is barred by the doctrines of *res judicata* and collateral estoppel. As an initial matter, as explained in Empire Wind's Motion, the two lead plaintiffs in the respective cases—Save Long Beach Island and Robert Stern—are identical. Motion at 28-29. Their MMPA claim is precluded and should be dismissed. Further, (i) the new Plaintiffs in this matter—Plaintiffs Alan Shinn, Save the East Coast, Protect Our Coast-LINY, and the Borough of Seaside Park ("New Plaintiffs")—were adequately represented by Save Long Beach Island and Robert Stern in *SLBI I*, (ii) the court in *SLBI I* issued a final judgment on the merits, and (iii) *SLBI I* and this case involved the same nucleus of operative facts—namely, the impact of both surveys and pile driving on marine mammals.

### 1. Plaintiffs were adequately represented in *SLBI I*.

Plaintiffs argue that the MMPA claim in this action is not barred because the New Plaintiffs were not adequately represented by Plaintiffs Save Long Beach Island and Robert Stern in *SLBI I* under the formulation articulated by the Supreme Court in *Taylor v. Sturgell*, 553 U.S. 880 (2008). Opposition at 16-18. Plaintiffs are wrong. The New Plaintiffs here are closely aligned with lead plaintiffs Save Long Beach Island and Robert Stern, and these Plaintiffs frequently work together to advance their interests.

In *Taylor*, the Supreme Court described "six categories" of exceptions to the general rule against nonparty preclusion. 553 U.S. at 893-96. Those categories "provide a framework" and do not "establish a definitive taxonomy," as this Court has emphasized. *See Swisher Int'l, Inc. v. United States Food & Drug Admin.*, No. 22-CV-954 (CRC), 2024 WL 4119480, at *9 (D.D.C. Sept. 9, 2024) (citing *Taylor*, 553 U.S. at 893 n.6). As this Court recently explained, a party's representation of a nonparty is adequate for *res judicata* purposes if the interests of the nonparty and its representative are aligned and either the party to the original suit understood itself to be acting in a representative capacity on behalf of the nonparty *or* the original court took care to protect the interests of the nonparty. *Id.*

Courts have found that plaintiffs to the original lawsuit "must have understood themselves to be acting in a representative capacity on behalf of" plaintiffs in the subsequent lawsuit where the parties shared identical interests, brought the same claims and requested the same relief, were represented by the same counsel, were co-plaintiffs in other proceedings, and the facts surrounding their "involve[ment] in the subject matter of the litigation" supported a finding that plaintiffs in the original lawsuit understood themselves to be representing plaintiffs in the subsequent lawsuit. *Cont'l W. Ins. Co. v. Fed. Hous. Fin. Agency*, 83 F. Supp. 3d 828, 835–36 (S.D. Iowa 2015) (finding subsidiary adequately represented its parent's interests in prior suit where the two parties

asserted nearly identical claims, sought same relief, were represented by same counsel, were co-plaintiffs in another suit, and new issues raised by parent were different bases for arguing same claims brought by subsidiary); *see also Midwest Disability Initiative v. JANS Enters., Inc.*, 929 F.3d 603, 608–09 (8th Cir. 2019) (subsequent lawsuit by members of disability nonprofit was barred where nonprofit understood itself to have acted in a representative capacity on behalf of its individual members in original suit because claims and relief sought were the same, nonprofit's complaint alluded to protecting interests of disabled individuals, and members had constructive notice of nonprofit's original lawsuit where nonprofit and members were co-plaintiffs in other litigation and were represented by same attorney).  Courts have also recognized that constructive notice of the prior lawsuit weighs in favor of a finding of "adequate representation" under *Taylor*. *See e.g.*, *Cont'l W. Ins. Co.*, 83 F. Supp. at 836 (citing *Taylor*, 553 U.S. at 900 and holding that plaintiff's constructive notice of original lawsuit weighed in favor of finding that plaintiff was adequately represented, as parties shared same counsel and participated in joint litigation efforts that suggested plaintiff could have participated in first suit but chose not to).

Here, the New Plaintiffs' interests are perfectly aligned with the interests of the two lead plaintiffs in this case and, by extension, with the interests of the plaintiffs in *SLBI I*.  *See* Dkt. Motion at 22-23; Dkt. No. 21 at 26-27.  Moreover, in *SLBI I*, Plaintiff Save Long Beach Island understood itself to be acting in a representative capacity representing the interests of the New Plaintiffs, who are all additional residents and businesses seeking to ensure the protection of marine mammals off the coasts of New York and New Jersey, for economic, recreational, and aesthetic purposes.  *See* Dkt. No. 1 at ¶¶ 7-12.  Contrary to Plaintiffs' attempts to distance themselves from the plaintiffs in *SLBI I*, the two sets of plaintiffs in these effectively identical

actions are "far from 'mere strangers.'" *Cont'l W. Ins. Co.*, 83 F. Supp. 3d at 836.[12]  Here, in addition to sharing the same interests (protection of marine mammals offshore New York and New Jersey), bringing the same claims (violations of the MMPA based on "small numbers" interpretation),[13] and requesting the same relief (vacatur of Empire Wind's Letter of Authorization),[14] the two sets of plaintiffs are also represented by the same counsel (Thomas Stavola) and have been working together to challenge offshore wind project approvals for years. For example, the *SLBI I* plaintiffs and the New Plaintiffs have submitted joint comments and petitions in federal and state administrative proceedings challenging offshore wind projects, hosted joint events for their supporters, and participated in other litigation challenging offshore wind projects.  Specifically,

- Save Long Beach Island and Save the East Coast submitted joint comments on the environmental review process for the Atlantic Shores offshore wind project in July 2023.[15]
- Save the East Coast and Protect Our Coast-LINY submitted a Joint Petition to Revoke Empire Wind's Clean Air Act Permit in March 2025.[16]
- Save Long Beach Island and Save the East Coast hosted and participated in the "Hands Across the Beaches" anti-offshore wind event in July 2023.[17]

---

[12] *In Continental Western*, the court found that the "adequate representation" test was satisfied where the parties to the original and subsequent lawsuits were "far from 'mere strangers,' made the same claims and sought identical relief, were represented by the same counsel, and had a legal relationship as parent and subsidiary and as co-plaintiffs in another pending case. *Id.* The court distinguished these circumstances from the "virtual representation" rejected by the Supreme Court in *Taylor*, recognizing that "[t]he *Taylor* Court rightly rejected the notion that preclusion could apply to two plaintiffs who were legal and actual strangers to one another—this is not such a case." *Id.*

[13] *Compare* Dkt. No. 1 at ¶¶ 21-46 *and SLBI I*, Case No. 3:23-cv-1886, Dkt. No. 81-1 at ¶¶ 102-133 (D.N.J.) (Mar. 29, 2024) (*SLBI I* Amended Complaint).

[14] *Compare* Dkt. No. 1 at ¶ 95 *and SLBI I*, Case No. 3:23-cv-1886, Dkt. No. 81-1 at ¶¶ 57-58 (D.N.J.) (Mar. 29, 2024) (*SLBI I* Amended Complaint).

[15] *See* https://www.regulations.gov/comment/BOEM-2023-0030-1537.

[16] .*See* https://save-the-east-coast.org/petition-to-reopen-empire-wind-clean-air-permit/.

[17] *See* https://nj1015.com/hands-across-the-beaches-protest-wind-turbine-installation/.

- Plaintiffs Save the East Coast, Save Long Beach Island, and Protect Our Coast-LINY are all described as "affiliates and other groups opposed to offshore wind" on the website of Green Oceans, yet another group opposed to offshore wind.
- Plaintiffs Captain Alan Shinn and Green Oceans are co-plaintiffs challenging the Revolution Wind offshore wind project in *Green Oceans v. DOI*, Case No. 1:24-cv-141, Dkt. No. 1 (D.D.C. filed Jan. 16, 2024).

Further, the Borough of Seaside Park was informed of the lawsuit that Save Long Beach Island was planning to file in New Jersey during a Mayor and Council meeting held on April 13, 2023.[18] Just as the Borough of Seaside Park considered whether to bring this lawsuit during a similar meeting in June 2025,[19] the Borough's April 13, 2023, meeting minutes show it was reviewing a "Memorandum from SaveLBI.org Concerning Whale Stranding Lawsuit."[20]  This meeting occurred just nine days after Save Long Beach Island and Robert Stern filed the *SLBI I* action on April 4, 2023, demonstrating that the Borough of Seaside Park had notice of *SLBI I* and failed to participate or intervene.  *Id*.  Here, the facts surrounding each Plaintiff's "involve[ment] in the subject matter of the litigation" support a finding that in *SLBI I*, Robert Stern and Save Long Beach Island understood themselves to be representing the interests of the New Plaintiffs.  *Cont'l W. Ins. Co.*, 83 F. Supp. 3d at 835–36.

---

[18] Borough of Seaside Park, New Jersey, Mayor and Council Work Session Minutes (Apr. 13, 2023), *available at* https://seasideparkboroughnj.documents-on-demand.com/Document/f1a82aeb-54b2-4ae9-9c08-0137de42e2da/04-13-2023%20MC%20Agenda%20(Work%20Session).pdf.

[19] Borough of Seaside Park, New Jersey, Mayor and Council Work Session Minutes (June 5, 2025), *available at* https://seasideparkboroughnj.documents-on-demand.com/Document/10cb2391-b840-f011-a450-000c29a59557/06-05-2025%20MC%20Agenda%20(Work%20Session).pdf) (describing the Borough's potential role as a co-litigant in the instant case).

[20] *See supra* at n.18.  Additional meeting minutes in February 2023 show the Borough of Seaside Park reviewing a report prepared by Save Long Beach Island in February 2023, two months prior to the filing of *SLBI I*.  *See* Borough of Seaside Park, New Jersey, Mayor and Council Work Session Minutes (Feb. 9, 2023), *available at* https://seasideparkboroughnj.documents-on-demand.com/Document/b71d5098-ecac-4641-861a-9d7ac56623a3/02-09-2023%20MC%20Minutes%20(Work%20Session).pdf.

Moreover, in *SLBI I*, the court took care to protect the interests of the New Plaintiffs as they are shared by Save Long Beach Island and Robert Stern.  In *SLBI I*, Save Long Beach Island and its President, Robert Stern, represented the interests of Save Long Beach Island's supporters: "Save Long Beach Island supporters have a legally protected interest in preserving the marine mammals, some of which, like the North Atlantic Right Whale, are critically endangered species." *SLBI I*, Dkt. No. 81-1 at ¶ 15 (*SLBI I* Amended Complaint).  Moreover, the *SLBI I* court's opinion recognized these interests, stating that Save Long Beach Island has "over 10,000 supporters, [and] was organized to 'guard human and natural resources,' including 'marine mammals, fish, and other species that inhabit, use, or migrate off the New Jersey and New York coasts'; 'the aesthetic elements of Long Beach Island and the New York Bight'; and 'economic interests strongly tied to the maintenance of the environmental features comprising Long Beach Island and the New York Bight.'"  *SLBI I*, 2025 WL 1829543, at *1 n.3.  These interests are the same as those alleged by the New Plaintiffs here.  Dkt. No. 1 at ¶¶ 7-12 (noting interests in "[protection of] the ocean and the diverse life it sustains, along with the coastal ecosystems and communities from the harms and costs of offshore wind and ocean industrialization;" "[protection of] every inch of Long Island's coasts, be it the ocean or the sound as well as the natural communities and neighborhoods that surround them;" protection of "the aesthetic and recreational values of the area;" protection of marine mammals for the purposes of sustaining a whale and dolphin watching business; and protecting the "ocean, recreational and commercial fishing interesting, the[] marine environment, tourism industry, property values, and quality of life on the Jersey Shore . . .").  The *SLBI I* court took care to address the same interests alleged by New Plaintiffs who, like Save Long Beach Island and Robert Stern, are committed to the protection of marine mammals and their habitat offshore New York and New Jersey.  *Id*.  The *SLBI I* court carefully considered NMFS's take estimates

based on its findings regarding noise source levels, noise transmission, range affected by noise disturbance, and other factors weighing on the agency's determination of "small numbers," but in the end declined to "second-guess NMFS's reasonable determinations simply because Dr. Stern takes a different view." *SLBI I*, 2025 WL 1829543, at *28.

Here, the New Plaintiffs are effectively asking this Court to conduct the exact same analysis as *SLBI I* regarding the protection of marine mammals in the waters offshore New York and New Jersey. The *SLBI I* court rejected the plaintiffs' claims. Under the doctrines of *res judicata* and collateral estoppel, the Plaintiffs in this action should not be allowed a second bite at the apple.

**2.    The *SLBI I* court issued a final judgment on the merits.**

Plaintiffs argue that the doctrines of *res judicata* and collateral estoppel do not apply because the court in *SLBI I* did not issue a final judgment on the merits. Opposition at 19-20. But the court in *SLBI I* unquestionably decided the merits, in addition to ruling on standing. As the court explained: "Notwithstanding these jurisdictional issues, Plaintiffs' claims fail on the merits. That is, the Court finds that Plaintiffs have failed to meet their high burden to prove that NMFS's take estimates of Right Whales and Humpback Whales were arbitrary and capricious . . ." *SLBI I*, 2025 WL 1829543, at *24. The court's consideration of the merits covered several pages, with the court even declining to "consider [certain] materials in its merits assessment." *Id*. at *24. Most importantly, the court's conclusion expressly states that its decision was a final judgment on the merits: "Federal Defendants' Cross Motion for Summary Judgment, (ECF No. 118), is **GRANTED** to the extent that it seeks dismissal of . . . the LOA issued to Empire Wind for lack of standing. Empire Wind's Cross Motion for Summary Judgment, (ECF No. 121), is **GRANTED** on standing grounds. *Alternatively, in the event that jurisdiction is found to exist, on the merits, summary judgment is **GRANTED** in favor of Federal Defendants and Empire Wind*." *Id*. at *31 (emphasis added). In short, for *res judicata* and collateral estoppel purposes, the court issued a

final judgment on the merits. *See, e.g., Quick v. EduCap, Inc.,* 318 F. Supp. 3d 121, 139 (D.D.C. 2018) (finding that even default judgments and consent decrees satisfy "final judgment on the merits" requirement of *res judicata*); *LaVergne v. United States House of Representatives*, 847 F. App'x 1, 6–7 (D.C. Cir. 2021) (finding collateral estoppel applied where court of competent jurisdiction had previously adjudicated justiciability of plaintiff's arguments).[21]

### 3.    *SLBI I* concerned surveys and pile driving and involved the same facts as this case.

Plaintiffs argue that *res judicata* and collateral estoppel do not apply because *SLBI I* and this case involve different facts—specifically, that the plaintiffs in *SLBI I* were focused on the impacts of high-resolution geophysical surveys and the Plaintiffs here are focused on the impacts of pile driving. Opposition at 20-21. But Plaintiffs have wholly failed to distinguish the "nucleus of facts" underlying their MMPA claim in *SLBI I* from their identical claim here. Plaintiffs' assertion that its MMPA arguments relating to the Empire Wind Project in *SLBI I* were focused on high-resolution geophysical surveys is incorrect. There, the plaintiffs argued that NMFS's take estimates of 29 North Atlantic Right Whales and 97 Humpback Whales in the Empire Wind Project's LOA violated the MMPA's "small numbers" and "negligible impact" requirements. 2025 WL 1829543, at *2. As the LOA Final Rule underlying Empire Wind's LOA explains, these take estimates were for *all* construction activities related to the Project, including both HRG surveys *and pile driving*. 89 Fed. Reg. 11342, 11391 (Feb. 14, 2024) (Table 37).

In any event, Plaintiffs' argument that pile driving was not at issue in *SLBI I* starkly underscores why *res judicata* applies to claims that could have been made. *Capitol Hill Grp. v.*

---

[21] Moreover, this Court has recognized that a court's "earlier dismissal of [a] claim for lack of subject matter jurisdiction is a final judgment on the merits for res judicata purposes." *Zellars v. United States*, 578 F. Supp. 2d 1, 3 (D.D.C. 2008).

*Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 491 (D.C. Cir. 2009).  As explained in the Motion at 22-24, there is no question that the plaintiffs could have raised claims regarding pile driving at all phases of the New Jersey litigation; after all, pile driving was authorized with the approval of the COP in February 2024 and the fact that pile driving would not begin until later is irrelevant.  Thus, to the extent pile driving was not at issue in *SLBI I*, as Plaintiffs assert, it was only because the Plaintiffs neglected to raise it in that case.  The doctrine of *res judicata* precludes Plaintiffs from bringing claims piecemeal in separate courts, hoping to obtain a different decision at each phase of construction.  *Id.*  It is hard to imagine a more quintessential basis for applying *res judicata* than these facts.

In sum, Plaintiffs cannot distinguish the nucleus of facts at issue in *SLBI I* from the facts at issue here.  Plaintiffs' MMPA claim should be barred by the doctrines of *res judicata* and collateral estoppel.

## II.    CONCLUSION

For the foregoing reasons, Empire Wind respectfully requests that this Court grant Empire Wind's Motion and dismiss Plaintiffs' Complaint.

Date:  September 25, 2025

Respectfully submitted,

_/s/ Ann D. Navaro_

Tyler S. Johnson (DC Bar #1003009)
**BRACEWELL LLP**
701 Fifth Avenue
Suite 6850
Seattle, Washington 98104
Telephone:  (206) 204-6211
Facsimile:  (800) 404-3970
Email:  ty.johnson@bracewell.com

Ann D. Navaro (DC Bar #1643328)
David A. Super (DC Bar #429359)
Taylor M. Stuart (DC Bar #1671892)
**BRACEWELL LLP**
2001 M Street NW, Suite 900
Washington, DC 20036
Telephone:  (202) 828-5800
Facsimile:  (800) 404-3970
Email:  ann.navaro@bracewell.com
          david.super@bracewell.com
          taylor.stuart@bracewell.com

*Counsel for Intervenor-Defendants*
*Empire Offshore Wind LLC and Empire*
*Leaseholder LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 25th day of September 2025, a true and complete copy of *Empire Wind's Reply in Support of Its Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim* was filed with the Clerk of the Court pursuant to the Court's electronic filing procedures, and served on counsel of record via the Court's electronic filing system

 */s/ Ann D. Navaro*
Ann D. Navaro (DC Bar #1643328)