**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAVE LONG BEACH ISLAND, INC., *et al.*,<br><br>     *Plaintiffs*,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>     *Defendants*,<br><br>    &<br><br>EMPIRE OFFSHORE WIND LLC, *et al.*,<br><br>     *Intervenor-Defendants.* | Civil Action No. 1:25-cv-02214 (CJN) |

<u>**MEMORANDUM OPINION**</u>

Plaintiffs allege that the government unlawfully approved an offshore wind farm off the coast of New York and New Jersey.  Intervenor-Defendants Empire Offshore Wind LLC and Empire Leaseholder LLC (collectively, Empire Wind), who are building the wind farm, move to dismiss on various grounds.  ECF 20.  For the reasons that follow, the Court grants in part and denies in part the motion.

       **I.**     **BACKGROUND**

**A.**    **Factual Background**

The Outer Continental Shelf Lands Act (OCSLA) authorizes the Secretary of Interior to issue leases for renewable energy projects, *see* 43 U.S.C. § 1337(p), and the Bureau of Ocean Energy Management (BOEM) manages the approval process for offshore wind projects, *see* 30 C.F.R. §§ 585.100, 585.102.  In late 2016, Empire Wind's parent company won an auction held

by BOEM for a lease to build a wind farm off the coast of New York and New Jersey. ECF 19-1 at 2–3. In January 2020, Empire Wind submitted a Construction and Operations Plan to BOEM. *Id.* at 5. After several rounds of modifications, BOEM approved the Plan in February 2024. *Id.* at 5–6. Later that year, BOEM reissued separate approvals for two stages of construction: Empire Wind 1 and Empire Wind 2. *Id.* at 6.

As part of that review process, BOEM prepared an Environmental Impact Statement pursuant to the National Environmental Policy Act (NEPA). *See* 42 U.S.C. § 4336(b)(1). BOEM received comments on the Statement both after it issued a Notice of Intent in June 2021 and after it published a draft Environmental Impact Statement in November 2022. ECF 19-1 at 7. After consulting with other government entities and considering the comments it received, BOEM published the final version of the Environmental Impact Statement for the Empire Wind Project in September 2023. *Id.* at 8. A few months later, BOEM and the National Marine Fisheries Service (NMFS) jointly issued a Record of Decision that concluded the NEPA review process. *Id.*

Empire Wind also sought authorization to conduct construction activities that could affect wildlife in the area. In December 2021, it requested a five-year Letter of Authorization from NMFS to "take" various marine mammals incidental to construction of the Empire Wind Project in compliance with the Marine Mammal Protection Act (MMPA).[1] *Id.* at 4. That Act permits NMFS to authorize the taking of "small numbers of marine mammals of a species or population stock if the Secretary, after notice . . . and opportunity for public comment[,] . . . finds that the total

---

[1] "The term 'take' means to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." 16 U.S.C. § 1362(13). The MMPA distinguishes between two levels of harassment takings. Level A harassment encompasses "any act of pursuit, torment, or annoyance which . . . has the potential to injure a marine mammal or marine mammal stock in the wild." *Id.* § 1362(18)(A)(i), (C). Level B harassment covers "any act of pursuit, torment, or annoyance which . . . has the potential to disturb a marine mammal or marine mammal stock in the wild by causing disruption of behavioral patterns." *Id.* § 1362(18)(A)(ii), (D).

of such taking during each five-year (or less) period concerned will have a negligible impact on such species or stock and will not have an unmitigable adverse impact on the availability of such species or stock for taking for subsistence uses." 16 U.S.C. § 1371(a)(5)(A)(i).  Following notice and comment and after reviewing the Environmental Impact Statement, NMFS issued a Letter of Authorization in February 2024 for the Project that permits the incidental taking of marine mammals through February 2029.  ECF 19-1 at 5.  Of relevance here, the Letter authorizes annual Level B harassment of up to 31.9 percent of Northern Migratory Coastal Bottlenose Dolphins.  *See Taking Marine Mammals Incidental to the Empire Wind Project, Offshore New York*, 89 Fed. Reg. 11342, 11416 (Feb. 14, 2024).  In January 2025, NMFS reissued the Letter with minor changes.  ECF 19-1 at 5.

With all relevant approvals secured, construction of the onshore portion of the Empire Wind Project began in April 2024.  ECF 19-2 at 3.  In-water installation of export cables to transfer electricity commenced in July 2024.  *Id.* at 4.  BOEM issued a suspension order in April 2025 that paused construction as part of the Department of Interior's general review of offshore wind projects but then lifted it after a month.  ECF 17-1 at 1, 3.  Building of monopile foundations for the wind turbines started in June 2025.  ECF 19-2 at 4.  And all construction for the Empire Wind 1 portion of the Project is set to conclude by the end of 2026.  *Id.* at 6.

**B.    Procedural History**

In April 2023, Save Long Beach Island, Inc., and Dr. Robert Stern filed a lawsuit in the District of New Jersey challenging authorizations issued by NMFS that permitted the incidental takings of marine mammals for several offshore wind projects.  Complaint at 1–4, *Save Long Beach Island v. U.S. Dep't of Com.*, No. 3:23-cv-1886 (D.N.J. Apr. 4, 2023).  In February 2024, the district court dismissed the suit without prejudice for mootness and lack of standing.  *See Save*

*Long Beach Island v. U.S. Dep't of Com.*, 721 F. Supp. 3d 317, 335, 340 (D.N.J. 2024).  Save Long Beach Island and Stern then filed an amended complaint the next month that explicitly challenged the Letter of Authorization for the Empire Wind Project.  Amended Complaint at 15, *Save Long Beach Island v. U.S. Dep't of Com.*, No. 3:23-cv-1886 (D.N.J. Mar. 29, 2024).  But, in June 2025, the district court granted summary judgment to Empire Wind and the government regarding the Letter of Authorization.  *See Save Long Beach Island v. U.S. Dep't of Com.*, 794 F. Supp. 3d 273, 332 (D.N.J. 2025).

In July 2025, Save Long Beach Island and Stern—along with new Plaintiffs Save the East Coast, Inc.; Protect Our Coast – LINY; Captain Alan Shinn; and the Borough of Seaside Park— filed this suit against various Federal Defendants, alleging that the Letter of Authorization and the Construction and Operations Plan for the Empire Wind Project violate the MMPA, NEPA, and OCSLA.  ECF 1 at 2–3.  Empire Wind intervened as a Defendant.  *See* Min. Order of Aug. 8, 2025.

In August 2025, Plaintiffs moved for the Court to stay the Letter of Authorization and Construction and Operations Plan or, in the alternative, to enter a preliminary injunction to halt construction.  ECF 17.  Their motion raised only their claim under the MMPA, arguing that the government's approval exceeded that statute's allowance of takings of "small numbers of marine mammals of a species or population stock" because it permits Level B harassment of 31.9 percent of the Northern Migratory Coastal Bottlenose Dolphin stock.  16 U.S.C. § 1371(a)(5)(A).  The Court denied that motion given that Plaintiffs failed to establish irreparable harm absent a stay or preliminary injunction and the equities did not weigh in their favor.  *See Save Long Beach Island, Inc. v. U.S. Dep't of Com.*, No. 25-cv-2214, 2025 WL 2996157, at *3–7 (D.D.C. Oct. 24, 2025).

The Court now considers Empire Wind's motion to dismiss the case for lack of subject-

matter jurisdiction and failure to state a claim.[2]  ECF 20.  In lieu of filing their own motion to dismiss, the Federal Defendants filed an unopposed motion to defer their deadline to respond to Plaintiffs' complaint until 30 days after the Court resolves Empire Wind's motion to dismiss.  ECF 25.  The Court granted that request.  *See* Min. Order of Oct. 3, 2025.

## II.    ANALYSIS

### A.    Legal Standards

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal due to a "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction."  *Yarullina v. United States*, 770 F. Supp. 3d 205, 210 (D.D.C. 2025).  "While the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction, the court must still accept all of the factual allegations in the complaint as true."  *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (alteration adopted) (citations and internal quotation marks omitted).

Federal Rule of Civil Procedure 12(b)(6) requires dismissal where a plaintiff "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  At the motion-to-dismiss stage, courts "accept the plaintiff's factual allegations as true and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Browning*

---

[2] In the interim, BOEM issued another suspension order that stopped construction on the Empire Wind Project—this time for national security reasons.  Complaint at 1–3, *Empire Leaseholder LLC v. Burgum*, No. 26-cv-4 (D.D.C. Jan. 2, 2026).  Soon after, Empire Wind filed a related lawsuit before this Court seeking to vacate that suspension order, and it also moved for a preliminary injunction and stay.  *Id.* at 34–35; Motion for Preliminary Injunction at 1–3, *Empire Leaseholder LLC v. Burgum*, No. 26-cv-4 (D.D.C. Jan. 6, 2026).  After a hearing, the Court orally granted Empire Wind's motion.  *See* Minute Entry, *Empire Leaseholder LLC v. Burgum*, No. 26-cv-4 (D.D.C. Jan. 15, 2026).  That case remains ongoing.

*v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (alterations adopted) (citation and internal quotation marks omitted). "Dismissal under Rule 12(b)(6) is appropriate where, taking all factual allegations as true and construing all inferences in the plaintiff's favor, a plaintiff's pleadings do not present 'enough facts to state a claim to relief that is plausible on its face.'" *Goodrich v. Bank of Am. N.A.*, 136 F.4th 347, 353 (D.C. Cir. 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## B.    OCSLA Claim

OCSLA authorizes "any person having a valid legal interest which is or may be adversely affected [to] commence a civil action on his own behalf to compel compliance with this [Act]." 43 U.S.C. § 1349(a)(1). "[N]o action may be commenced under" that citizen-suit provision, however, "prior to sixty days after the plaintiff has given notice of the alleged violation, in writing under oath, to the Secretary and any other appropriate Federal official, to the State in which the violation allegedly occurred or is occurring, and to any alleged violator." *Id.* § 1349(a)(2)(A). An exception exists to allow "[a]n action [to] be brought under this [Act] immediately after notification of the alleged violation in any case in which the alleged violation constitutes an imminent threat to the public health or safety or would immediately affect a legal interest of the plaintiff." *Id.* § 1349(a)(3). Empire Wind argues that Plaintiffs failed to provide the statutorily required notice. ECF 20-1 at 8–10. Plaintiffs respond that they can pursue their OCSLA claim under the Administrative Procedure Act (APA), which does not require such notice, and they alternatively contend that the "immediately affect" exception applies. ECF 23 at 8–12.

With respect to Plaintiffs' first argument, "the APA by its terms independently authorizes review only when 'there is no other adequate remedy in a court.'" *Bennett v. Spear*, 520 U.S. 154, 161–62 (1997) (quoting 5 U.S.C. § 704). "Consistent with that limitation, APA review is not

available if Congress has provided a 'special and adequate review procedure' elsewhere." *V.I. Hous. Fin. Auth. v. FEMA*, 151 F.4th 409, 418 (D.C. Cir. 2025) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 904 (1988)). "Because Congress's judgment is what matters," the Court evaluates "whether review under [OCSLA] is 'adequate' by looking for 'clear and convincing evidence of legislative intent to create a special, alternative remedy and thereby bar APA review.'" *Id.* (quoting *Citizens for Resp. & Ethics in Wash. v. DOJ*, 846 F.3d 1235, 1244 (D.C. Cir. 2017)). This inquiry asks (1) whether OCSLA "contain[s] its own independent cause of action or alternative review procedure"; (2) whether OCSLA "provide[s] at least the same genre of relief as the APA, even if that relief is not identical to or as effective as relief under the APA"; and (3) whether "APA and [OCSLA] review [are] incompatible in major respects." *Id.* (citations and internal quotation marks omitted).

All three considerations point toward the conclusion that OCSLA created an alternative remedy that forecloses APA review. Under OCSLA, "any person having a valid legal interest which is or may be adversely affected may commence a civil action on his own behalf to compel compliance with [the Act] against any person, including the United States, and any other government instrumentality or agency." 43 U.S.C. § 1349(a)(1). That text unambiguously creates an "independent cause of action." *V.I. Hous. Fin. Auth.*, 151 F.4th at 418 (citation and internal quotation marks omitted). And that the statute "provides [this] independent cause of action" suggests that "an adequate remedy exists." *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1270 (D.C. Cir. 2005); *accord Citizens for Resp. & Ethics*, 846 F.3d at 1245.

The relief offered under OCSLA's cause of action is also sufficiently similar to the relief available under the APA. An "alternative remedy need not provide relief identical to relief under

7

the APA, so long as it offers relief of the 'same genre.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) (quoting *El Rio*, 396 F.3d at 1272). OCSLA permits Plaintiffs to sue to "compel compliance with this [Act] . . . for any alleged violation of any provision," 43 U.S.C. § 1349(a)(1), which is similar to the kind of injunctive relief available under the APA, *see, e.g.*, 5 U.S.C. § 706(1) (authorizing courts to "compel agency action unlawfully withheld or unreasonably delayed"); *id.* § 706(2)(A) (permitting courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law"). "To adopt Plaintiffs' interpretation would" therefore "require the Court to act as if there were no remedy available under the citizen suit provision of OCSLA, or as if Plaintiffs were not seeking to correct 'violations' of OCSLA, contrary to the plain language of the [complaint]." *Ctr. for Biological Diversity v. Burgum*, No. 2:25-cv-2840, 2025 WL 2986120, at *5 (C.D. Cal. Sept. 10, 2025).

Finally, OCSLA's 60-day notice requirement makes review under that Act and the APA "incompatible in major respects, a circumstance inveighing against the theory that Congress sanctioned concurrent use of both." *Env't Def. Fund v. Reilly*, 909 F.2d 1497, 1506 (D.C. Cir. 1990). "[A]llowing Plaintiffs to proceed under the APA would allow them to circumvent the statutory notice requirement under the citizen suit provision in [OCSLA] simply by styling their claims as claims that arise under the APA." *Basel Action Network v. Mar. Admin.*, 370 F. Supp. 2d 57, 77 (D.D.C. 2005); *cf. Grosdidier v. Chairman*, 560 F.3d 495, 497 (D.C. Cir. 2009) ("Federal employees may not circumvent the Act's requirements and limitations by resorting to the catchall APA to challenge agency employment actions."). Another court in this District has accordingly held that for this reason, "Plaintiffs cannot . . . shoehorn their OCSLA citizen-suit claim into the

APA."[3]  *Green Oceans v. U.S. Dep't of the Interior*, No. 24-cv-141, 2025 WL 973540, at *13 (D.D.C. Apr. 1, 2025).  Given all this evidence of a "legislative intent to preclude," the Court concludes that OCSLA's citizen-suit provision is "an alternative remedy [that] is 'adequate' and therefore preclusive of APA review."[4]  *Citizens for Resp. & Ethics*, 846 F.3d at 1244–45 (quoting *Garcia*, 563 F.3d at 523).

Plaintiffs' alternative argument that the "immediately affect" exception exempts them from the 60-day notice requirement also fails.  OCSLA provides that "[a]n action may be brought under this [Act] immediately after notification of the alleged violation in any case in which the alleged violation constitutes an imminent threat to the public health or safety or would immediately affect

---

[3] Plaintiffs attempt to distinguish that decision on the ground that "the Court's justification for denying those Plaintiffs' OCSLA claim was not the impossibility of using the APA as a vehicle, but rather that they endeavored to convert an initial OCSLA-citizen suit-based claim into an OCSLA-APA claim later on." ECF 23 at 9.  To be sure, the court rejected the plaintiffs' contention that "they [were] not suing under OCSLA's citizen suit provision, but rather, under the APA" by pointing out that "this argument [was] belied by the explicit language in the Amended Complaint" citing OCSLA's citizen-suit provision. *Green Oceans v. U.S. Dep't of the Interior*, No. 24-cv-141, 2025 WL 973540, at *13 (D.D.C. Apr. 1, 2025).  And it criticized their attempt to "*change course* to shoehorn their OCSLA citizen-suit claim into the APA." *Id.* (emphasis added).  But regardless of the permissibility of the plaintiffs' belated attempt to reframe the source of their OCSLA claim, the court separately—and unequivocally—concluded that the existence of OCSLA's citizen-suit provision prohibited them from "bypass[ing] the explicit requirements of the Act established by Congress through resort to the APA." *Id.* (alteration adopted) (quoting *Basel*, 370 F. Supp. 2d at 76).

[4] Although Plaintiffs do not make this argument—much less cite this particular provision of OCSLA—the Court acknowledges that OCSLA's command that "[n]othing in this section shall restrict any right which any person or class of persons may have under any other Act or common law to seek appropriate relief" could be read to suggest that the Act was not meant to foreclose relief under other statutes like the APA.  43 U.S.C. § 1349(a)(6).  The Court is unconvinced, however, that this provision means that Plaintiffs can proceed under the APA.  For all the reasons already discussed, Plaintiffs do not appear to have a "right" to relief under the APA, *id.*, because that statute "independently authorizes review only when 'there is no other adequate remedy in a court,'" *Bennett*, 520 U.S. at 161–62 (quoting 5 U.S.C. § 704).  Indeed, it would be circular and question-begging to read this provision as allowing Plaintiffs to bring OCSLA claims under both statutes given that the availability of relief under one is dependent on the unavailability of relief under the other.

a legal interest of the plaintiff."  43 U.S.C. § 1349(a)(3).  "A plaintiff provides adequate notice under . . . OCSLA when its legal interests will be immediately affected by an agency's violation of the statute so long as the plaintiff gives the notice prior to filing the action."  *Chevron, U.S.A., Inc. v. FERC*, 193 F. Supp. 2d 54, 64 (D.D.C. 2002), *aff'd sub nom.*, *Williams Cos. v. FERC*, 345 F.3d 910 (D.C. Cir. 2003); *see also Fisheries Survival Fund v. Jewell*, No. 16-cv-2409, 2018 WL 4705795, at *11 (D.D.C. Sept. 30, 2018) (observing that "[t]o be eligible for that exception, a plaintiff must . . . provide notice of the alleged violation"), *aff'd*, 858 F. App'x 371 (D.C. Cir. 2021).

This exception does not apply here for multiple reasons.  As a threshold matter, it does not appear that Plaintiffs submitted any notice before filing suit.  Plaintiffs assert that the need to "file suit as soon as practically possible" after construction began "obviate[ed] their ability to submit a notice and wait the 60 days pre-commencement."  ECF 23 at 12.  But the exception allows them to bypass the 60-day wait, not the obligation to provide any notice.  *See* 43 U.S.C. § 1349(a)(3) (directing that "[a]n action may be brought" under the exception "*after* notification of the alleged violation" (emphasis added)); *see also Chevron*, 193 F. Supp. 2d at 64.  Additionally, "the alleged violation" did not "immediately affect a legal interest of" Plaintiffs in a way that permitted them to avoid the 60-day notice requirement.  43 U.S.C. § 1349(a)(3).  Plaintiffs challenge "BOEM's unlawful agency action, namely, its approval of Empire Wind," and argue that "the Empire Wind Project was sanctioned under the erroneous interpretation of subsection 8(p)(4)" of OCSLA.  ECF 1 ¶¶ 68, 86.  But BOEM approved the Construction and Operations Plan for the Empire Wind Project in February 2024[5]—more than a year before Plaintiffs filed this suit in July 2025.  ECF 19-

---

[5] In December 2024, BOEM reissued its approval of the Plan as two separate approvals: one for Empire Wind 1 and one for Empire Wind 2.  ECF 19-1 at 6.

1 at 5–6. So even assuming that Plaintiffs' legal interests were affected by the approval, the effect was not "immediate[]," as required to trigger the exception. 43 U.S.C. § 1349(a)(3).

In sum, because "the citizen suit provision in the instant case plainly bars *all cases* which do not comply with the provision," *Duke Energy Field Servs. Assets, LLC v. FERC*, 150 F. Supp. 2d 150, 156 (D.D.C. 2001), Plaintiffs' failure to provide the requisite 60-day notice of the alleged violation before filing suit or to fall under the "immediately affect" exception requires dismissal of their OCSLA claim.

## C.    NEPA Claim

Title 41 of the Fixing America's Surface Transportation Act (FAST-41) provides that "judicial review of any authorization issued by a Federal agency for a covered project" in "an action pertaining to an environmental review conducted under NEPA" "shall be barred unless" "the claim is filed by a party that submitted a comment during the environmental review" and "any commenter filed a sufficiently detailed comment so as to put the lead agency on notice of the issue on which the party seeks judicial review, or the lead agency did not provide a reasonable opportunity for such a comment on that issue." 42 U.S.C.A. § 4370m-6(a)(1)(B). The Empire Wind Project is a "covered project" subject to this provision. *See* Taking Marine Mammals Incidental to the Empire Wind Project, Offshore New York, 89 Fed. Reg. at 11343. Empire Wind contends that because Plaintiffs did not submit a comment during the Project's environmental review, their NEPA claim must be dismissed. ECF 20-1 at 10–13.

Plaintiffs respond that adjudicating compliance with FAST-41 now would be premature given that the issue depends on fact-based questions about their comment history. ECF 23 at 2–8. As support for this position, they rely on *Mayor & City Council of Ocean City v. United States Department of the Interior*, in which the court concluded that "FAST-41's exhaustion provision

11

falls within the category of contests surrounding the facts, the merits of a claim, or the applicability of defenses that courts typically decline to adjudicate in a Rule 12(b)(6) motion." No. 24-cv-3111, 2025 WL 1827963, at *4 (D. Md. July 2, 2025) (citation and internal quotation marks omitted). That court accordingly "decline[d] to eliminate any claims at the motion to dismiss stage on the basis of FAST-41 compliance, because those exhaustion-based claims can be best adjudicated on a complete factual record." *Id.* at *5. Empire Wind distinguishes *Mayor & City Council* on the ground that, unlike here, "there was a legitimate debate as to whether the plaintiffs had submitted comments during the environmental review process for each project." ECF 20-1 at 13 n.18. And it contends that the Court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case" when evaluating a motion to dismiss under Rule 12(b)(1), *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), *aff'd*, No. 00-7176, 2001 WL 135857 (D.C. Cir. Jan. 18, 2001), and "may look to record of another proceeding to avoid unnecessary proceedings when an undisputed fact on the public record makes it clear that the plaintiff does not state a claim upon which relief could be granted" when reviewing a motion to dismiss under Rule 12(b)(6), *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (citation and internal quotation marks omitted).

The Court can look at the relevant comment history, even though not expressly set forth in the complaint, regardless of how it proceeds under Rule 12.[6] Under Rule 12(b)(1), the Court can plainly rely on materials outside the pleadings when evaluating a motion to dismiss for lack of subject-matter jurisdiction. *See Jerome Stevens Pharms.*, 402 F.3d at 1253 ("[T]he district court

---

[6] Empire Wind primarily relies on Rule 12(b)(1) when arguing in favor of dismissal of this claim, but it also invokes Rule 12(b)(6) in the alternative. *See* ECF 20-1 at 10–11 & n.15.

may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").  Indeed, "[w]hen facing a Rule 12(b)(1) motion to dismiss, plaintiff bears the burden of demonstrating that jurisdiction exists." *Est. of McDaniels v. Liberty Mut. Grp. Inc.*, 888 F. Supp. 2d 185, 187 (D.D.C. 2012).

The Court can also consider materials in the public record when adjudicating a motion to dismiss under Rule 12(b)(6) for failure to state a claim.  *See Baker v. Henderson*, 150 F. Supp. 2d 17, 19 n.1 (D.D.C. 2001) ("[T]he court may take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment."); *Covad Commc'ns*, 407 F.3d at 1222.  "[P]ublic comments and the agency's response to them" appear to "qualify as public records" that the Court can consider.  *Pharm. Rsch. & Mfrs. of Am. v. Becerra*, No. 21-cv-1395, 2021 WL 5630798, at *5 n.4 (D.D.C. Dec. 1, 2021).  In addition, "even when failure to exhaust is treated as an affirmative defense, it may be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face." *Thompson v. DEA*, 492 F.3d 428, 438 (D.C. Cir. 2007).  Plaintiffs arguably revealed the exhaustion defect in their complaint by alleging that "Plaintiff Save Long Beach Island, Inc., participated in the administrative process by submitting a public comment on the New York Bight programmatic EIS, related to Empire Wind's environmental impact," and providing a link to that comment, which for the reasons detailed below, does not suffice under FAST-41.  ECF 1 ¶ 48 & n.14.  Given all these avenues for considering the comments cited by the Parties in their briefing and filings, Plaintiffs' reliance on *Mayor & City Council* is unpersuasive.

And here, FAST-41 bars Plaintiffs from pursuing their NEPA claim.  In response to Empire Wind's contention that they failed to "submit[] a comment during the environmental review," 42 U.S.C. § 4370m-6(a)(1)(B)(i), Plaintiffs cite a single comment that Save Long Beach Island and

13

Stern submitted on July 22, 2021, regarding the "Proposed Sale Notice (PSN), Atlantic Wind Lease Sale 8 for Commercial Leasing for Wind Power on the Outer Continental Shelf (OCS) in the New York Bight," *see* ECF 1 ¶ 48 & n.14; ECF 23 at 4–8; ECF 23-1.  This comment, however, has nothing to do with the environmental review for the Empire Wind Project.  As even Plaintiffs themselves concede, "the PSN . . . [is] not a NEPA document in and of itself" and "the NY Bight leasing did not specifically include the lease area of Empire Wind."  ECF 23 at 5–6.  Given that Plaintiffs bring this suit to challenge "BOEM's adoption of the [Record of Decision] and Final [Environmental Impact Statement] for [the] Empire Wind [P]roject," ECF 1 ¶ 66, not BOEM's decision to not produce an Environmental Impact Statement before auctioning off the eight New York Bight leases unrelated to the Empire Wind Project, ECF 23-1 at 1, Plaintiffs did not submit a comment "during the environmental review" for the relevant "covered project" that they challenge under NEPA, 42 U.S.C. § 4370m-6(a)(1)(B)(i).

Plaintiffs' suggestion that the comment was nonetheless sufficient because FAST-41's use of "environmental review" "is not defined as specifically project-specific environmental review" is entirely unconvincing.  ECF 23 at 6.  Lacking any substantive connection between the Empire Wind Project and the PSN for the New York Bight leases,[7] Plaintiffs contend that their comment about the latter affected the former because "BOEM was in possession of Plaintiffs['] comments during the environmental review of Empire Wind, and had more than sufficient time to consider

---

[7] Plaintiffs assert in passing—without citation or support—that "Empire Wind's project specific [Environmental Impact Statement] was plausibly tiered from the earlier leasing within the NY Bight."  ECF 23 at 7.  But just because "NEPA expressly contemplates tiering from programmatic or macroscale policy documents to site-specific documents" does not mean that the Environmental Impact Statement for the Empire Wind Project was the result of tiering.  *Id.* (citing 40 C.F.R. § 1501.11(b)(2)(i)).  Given that Plaintiffs do not allege any facts that could substantiate their conclusory assertion, *see* ECF 1; ECF 23, and Empire Wind rejects it as "patently false," ECF 24 at 10 n.11, the Court does not find BOEM's general practice of sometimes tiering environmental reviews to be relevant to this issue.

14

[them]." *Id.* at 7. But FAST-41 repeatedly uses project-specific language to require a closer link than a mere progression in time. Its "[l]imitations on claims" applies to "*a claim* arising under Federal law seeking judicial review of any authorization issued by a Federal agency *for a covered project*." 42 U.S.C. § 4370m-6(a)(1) (emphases added). And the specific provision requiring that "a party [have] submitted a comment during the environmental review" is particular to "the claim" being raised about the aforementioned "covered project." *Id.* The mere fact that BOEM received Plaintiffs' comment about the New York Bight leases sometime before it completed the Environmental Impact Statement for the Empire Wind Project is insufficient in light of the lack of a link between the comment and the NEPA claim Plaintiffs raise. Because Plaintiffs are not "a party that submitted a comment during the environmental review" for the Empire Wind Project, their NEPA claim is "barred" and must be dismissed. *Id.* § 4370m-6(a)(1)(B)(i).

### D.    MMPA Claim

"Under the doctrine of res judicata, or claim preclusion, a subsequent lawsuit will be barred if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006). The related doctrine of collateral estoppel, or issue preclusion, similarly bars a later lawsuit where (1) "the same issue now being raised [was] contested by the parties and submitted for judicial determination in the prior case," (2) "the issue [was] actually and necessarily determined by a court of competent jurisdiction in that prior case," and (3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). Empire Wind argues that both preclusion doctrines prevent Plaintiffs from pursuing their MMPA claim in this case because Save Long Beach Island

15

and Stern already lost a similar suit in the District of New Jersey.  ECF 20-1 at 13–24.  Plaintiffs respond that the earlier dismissal does not bind the Plaintiffs in this case who were not parties to that suit, and, in any event, that court ultimately decided the case on jurisdictional grounds and did not resolve the same MMPA issue that Plaintiffs raise here.  ECF 23 at 12–19.

Before applying the preclusion standards, it is necessary to understand what the district court did and did not decide in *Save Long Beach Island v. U.S. Department of Commerce* (*SLBI I*), 794 F. Supp. 3d 273 (D.N.J. 2025).  In that lawsuit, Save Long Beach Island and Stern sued the Department of Commerce, NMFS, Howard Lutnick in his official capacity as Secretary of Commerce, and Eugenio Piñeiro Soler in his official capacity as Assistant Administrator of NMFS—all of whom are Defendants in this case as well—for alleged violations of the APA, MMPA, and NEPA.  *Id.* at 288–89.  They "challenge[d] six Incidental Harassment Authorizations . . . and one Letter of Authorization . . . issued by Defendant NMFS to various windfarm developers off the coast of New York and New Jersey," including for the Empire Wind Project. *Id.* at 289.  As its principal holding, the "[t]he Court grant[ed] summary judgment in Defendants' favor on jurisdictional grounds" for mootness and standing issues.  *Id.* at 322.  It also went on to conclude that, "[n]otwithstanding these jurisdictional issues, Plaintiffs' claims fail on the merits." *Id.*  The court rejected those plaintiffs' argument that NMFS violated the MMPA's "small numbers" provision by allowing "Level B Harassment of up to 97 Humpback Whales throughout the five-year period . . . and Level B Harassment of 29 Right Whales throughout the five-year period" for the Empire Wind Project.  *Id.* at 322–28.  It did not, however, address the take of Northern Migratory Coastal Bottlenose Dolphins that Plaintiffs now challenge in this suit.

Neither res judicata nor collateral estoppel bars the new Plaintiffs—Alan Shinn, Save the East Coast, Protect Our Coast – LINY, and the Borough of Seaside Park—from bringing their

16

MMPA claim here because they were not parties to nor adequately represented in the original suit. "A person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). "The application of claim and issue preclusion to nonparties thus runs up against the 'deep-rooted historic tradition that everyone should have his own day in court.'" *Id.* at 892–93 (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996)). To be sure, there are some exceptions that permit issue and claim preclusion against nonparties. As relevant here, "'in certain limited circumstances,' a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who was a party' to the suit." *Id.* at 894 (alteration adopted) (quoting *Richards*, 517 U.S. at 798). "A party's representation of a nonparty is 'adequate' for preclusion purposes only if, at a minimum: (1) The interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Id.* at 900 (citations omitted). "In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented." *Id.*

Empire Wind argues that "the New Plaintiffs' interests are perfectly aligned with the interests of the *SLBI I* plaintiffs," ECF 20-1 at 22, but nonparty preclusion requires more. In particular, preclusion would bar this claim only if Save Long Beach Island and Stern "understood [themselves] to be acting in a representative capacity or the original court took care to protect the interests of the nonpart[ies]." *Taylor*, 553 U.S. at 900. Empire Wind emphasizes that "the two sets of plaintiffs are . . . represented by the same counsel (Thomas Stavola) and have been working together to challenge offshore wind project approvals for years." ECF 24 at 15. Finding preclusion based on common legal representation and cooperation in advocacy efforts for other projects and

17

issues not challenged in this suit, however, would be inconsistent with "the constrained approach to nonparty preclusion [the Supreme Court's] decisions advance." *Taylor*, 553 U.S. at 898. Although these connections certainly suggest an alignment of interests, they do not establish that Save Long Beach Island and Stern acted in a representative capacity or that the court in *SLBI I* acted to protect the additional Plaintiffs in this suit.[8] And that the *SLBI I* court "carefully considered" the issue of the MMPA's small numbers provision, ECF 24 at 17–18, is not the kind of court action the Supreme Court contemplated when explaining the boundaries of this exception. Indeed, nothing about the earlier case suggests that it was specially "devised and applied as to insure that those present [were] of the same class as those absent and that the litigation [was] so conducted as to insure the full and fair consideration of the common issue." *Richards*, 517 U.S. at 801 (quoting *Hansberry v. Lee*, 311 U.S. 32, 43 (1940)).

Empire Wind's citations to cases where other courts found adequate representation are unavailing. The relationships between a subsidiary and its parent company, *see Cont'l W. Ins. v. Fed. Hous. Fin. Agency*, 83 F. Supp. 3d 828, 835–36 (S.D. Iowa 2015), and between a nonprofit and its members, *see Midwest Disability Initiative v. JANS Enters., Inc.*, 929 F.3d 603, 608–09 (8th Cir. 2019), are different in kind than the relationship between distinct advocacy groups (along with a municipality and ship captain) that happen to have overlapping interests, *see Taylor*, 553 U.S. at 894 ("Representative suits with preclusive effect on nonparties include properly conducted class actions and suits brought by trustees, guardians, and other fiduciaries." (citation omitted)).

---

[8] Empire Wind also suggests that Save Long Beach Island and Stern adequately represented the Borough of Seaside Park in the original suit because it "had notice of *SLBI I* and failed to participate or intervene." ECF 24 at 16. This argument is misplaced, however, because notice is a separate consideration under the Supreme Court's test for adequate representation, *see Taylor*, 553 U.S. at 900, and, in any event, that the Borough of Seaside Park was allegedly considering joining the earlier lawsuit says nothing about whether Save Long Beach Island and Stern were acting in a representative capacity.

Moreover, Save Long Beach Island and Stern "did not sue on behalf of a class; their pleadings did not purport to assert any claim against or on behalf of any nonparties; and the judgment they received did not purport to bind any . . . nonparties." *Richards*, 517 U.S. at 801. "[O]ne person's lawsuit generally does not bar another's, no matter how similar they are in substance," *Cooper v. Harris*, 581 U.S. 285, 297 (2017), and none of the exceptions that could justify departing from that default rule apply in this case.

As for the repeat Plaintiffs (Save Long Beach Island and Stern), res judicata and collateral estoppel do not bar their MMPA claim. It is well established that "dismissals for lack of jurisdiction are not decisions on the merits and therefore have no *res judicata* effect on subsequent attempts to bring suit in a court of competent jurisdiction." *Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999); *accord Havens v. Mabus*, 759 F.3d 91, 98 (D.C. Cir. 2014). As noted above, the *SLBI I* court "grant[ed] summary judgment in Defendants' favor on jurisdictional grounds." 794 F. Supp. 3d at 322. To be sure, it also went on to conclude that, "[n]otwithstanding these jurisdictional issues, Plaintiffs' claims fail on the merits." *Id.* But the court's merits statements have no res judicata effect in light of the fact that the court had already determined that it lacked jurisdiction. As the Court of Appeals has put it, "once a court determines that it lacks subject matter jurisdiction, it can proceed no further." *Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997); *cf. In re Sealed Case*, 131 F.3d 208, 210 (D.C. Cir. 1997) ("If we are without subject-matter jurisdiction over the case ostensibly before us, then any pronouncement on any issue, even though that issue would itself be otherwise appealable, becomes a violation of our Article III limitations."). Indeed, the *SLBI I* court's own merits determination appears to be conditional, s*ee* 794 F. Supp. 3d at 332 ("Alternatively, *in the event that jurisdiction is found to exist*, on the merits, summary judgment is GRANTED in favor of Federal Defendants and Empire

19

Wind." (emphasis added)), which is insufficient to meet the requirement of "a final, valid judgment on the merits," *Smalls*, 471 F.3d at 192. Other courts have reached the same conclusion when considering the res judicata effect of alternative holdings on both jurisdictional and merits grounds. *See, e.g.*, *Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1166 (9th Cir. 2016) ("Even assuming that the district court properly opined on the merits in [its earlier opinion], its judgment on the merits had no res judicata effect because the court lacked personal jurisdiction.").

For overlapping reasons, collateral estoppel does not bar Save Long Beach Island and Stern's MMPA claim either. Empire Wind contends that "Plaintiffs' MMPA claim here raises the same issues presented by the claim in *SLBI I*—*i.e.*, whether NMFS failed to properly evaluate the 'small numbers' and 'negligible impact' analyses of the Empire Wind Project on marine mammals in the New Jersey/New York Bight."[9] ECF 20-1 at 24. Again, it is doubtful that any merits discussion had preclusive effect in light of the *SLBI I* court's principal conclusion that it lacked jurisdiction. The merits of the MMPA claim were therefore not "necessarily determined" in *SLBI I*. *Yamaha Corp.*, 961 F.2d at 254. And although collateral estoppel can apply to issues raised in a jurisdictional dismissal despite not being a decision on the merits, such preclusion appears limited to "the precise issues *of jurisdiction* that le[d] to the dismissal in the previous case."

___

[9] Although Empire Wind could have potentially argued that the *SLBI I* court's ruling on standing implicated collateral estoppel here, it did not do so. *See Cutler v. Hayes*, 818 F.2d 879, 888 (D.C. Cir. 1987) ("Standing ranks amongst those questions of jurisdiction and justiciability not involving an adjudication on the merits, whose disposition will not bar relitigation of the cause of action originally asserted, but may preclude, or collaterally estop, relitigation of the precise issues of jurisdiction adjudicated." (footnotes omitted)). Instead, Empire Wind's motion to dismiss focused exclusively on how the earlier decision's MMPA analysis—not its standing conclusions—precludes this claim under principles of collateral estoppel. *See* ECF 20-1 at 24. Because "a defense of preclusion . . . may be waived," *N.Y. Shipping Ass'n, Inc. v. Fed. Mar. Comm'n*, 854 F.2d 1338, 1352 (D.C. Cir. 1988), the Court declines to consider such a theory.

*Reynolds v. U.S. Capitol Police Bd.*, 357 F. Supp. 2d 2, 10 (D.D.C. 2004) (emphasis added); *see also GAF Corp. v. United States*, 818 F.2d 901, 912 (D.C. Cir. 1987).

In any event, Empire Wind's invocation of collateral estoppel separately fails because the *SLBI I* court never addressed the MMPA issues specific to Northern Migratory Coastal Bottlenose Dolphins that Plaintiffs raise here. "[U]nlike the bar of res judicata, an estoppel intercepts only issues that were actually determined in the earlier suit; it does not affect those that might have been but were not decided, nor those not essential to the previous adjudication." *Nat'l Sav. & Tr. Co. v. Rosendorf*, 559 F.2d 837, 838–39 (D.C. Cir. 1977) (footnotes omitted). Thus, even if Save Long Beach Island and Stern could have objected in the earlier suit to the level of incidental takings of Northern Migratory Coastal Bottlenose Dolphins that NMFS authorized for the Empire Wind Project, that they did not do so means that the issue was not "actually . . . determined by a court of competent jurisdiction in that prior case." *Yamaha Corp.*, 961 F.2d at 254.

### III.   CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Empire Wind's motion to dismiss. ECF 20. The Court will issue an Order contemporaneously with this Memorandum Opinion.

DATE:  July 27, 2026

_____
CARL J. NICHOLS
United States District Judge